STATE of Iowa, Appellee,

v.

Darrell Glenn BLACKFORD, Appellant.

No. 68333.

Supreme Court of Iowa.

June 15, 1983.

Kermit L. Dunahoo, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen. and Shirley Ann Steffe, Asst. Atty. Gen., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, LARSON, and CARTER, JJ.

CARTER, Justice.

Defendant, Darrell Glenn Blackford, appeals from judgment imposed upon his conviction of the offense of sexual abuse in the

third degree in violation of Iowa Code section 709.4(1) (1981). He contends on appeal that the trial court erred in excluding material testimony of the victim's husband on the ground of marital privilege and in failing to require a finding of criminal intent in its marshalling instruction to the jury. In addition, defendant contends he should be granted a new trial because of ineffective assistance of his trial counsel. We consider the claims which defendant has asserted and affirm the judgment of the district court.

The evidence indicates that the victim of the alleged sexual abuse was a twenty-six year old female who had at one time lived next door to the defendant. At the time of the offense in question, the victim had moved from that location and was separated from her husband. She was living in a mobile home with her two children.

The victim and the defendant were the only witnesses who testified concerning the events surrounding the crime. The victim testified that at about four a.m. on Sunday, October 18, 1981, she heard a knock on the door of her mobile home which awakened her from sleep. She testified that when she went to the door she discovered that it was the defendant who was knocking. She testified that she admitted him to the mobile home because she was aware of the fact that defendant's wife was expecting the birth of a child at any time and assumed that he had come to seek assistance in caring for his children. The victim further testified that upon entering the mobile home the defendant overpowered her and forced her into a bedroom where he had sexual relations with her against her will. She reported the incident to the sheriff a few hours later.

Defendant testified at the trial and admitted that he had entered the victim's mobile home at about the time she claimed. He further admitted that he had had sexual intercourse with her at this time. He contended in his testimony, however, that the victim had encouraged him to stop by and had consented to and encouraged the sexual relations which took place. Other facts which are material to the issues raised in defendant's appeal will be discussed in connection with our review of his assignments of error.

I. *Exclusion of Testimony by the Victim's Husband.*

Defendant's first assignment of error concerns the exclusion by the trial court of certain testimony by the victim's husband on the ground of the marital privilege found in Iowa Code section 622.9 (1981). The defendant asserts that this evidentiary ruling constitutes reversible error.

The victim testified that at the time of the crime she was in the process of a marriage dissolution proceeding with her husband who had only recently been released from prison. She indicated in her testimony that child custody was an issue in the dissolution action. Both the victim and the defendant testified that on the morning in question the defendant had entered the victim's residence through a door located at the rear of the mobile home near the bedroom where the sexual activity took place.

During cross-examination the victim testified that at the time of the attack one of her children was awakened and became aware of defendant's presence in the mobile home. She further testified as follows:

Q. Were you concerned on the date of this occurrence about any accusations that might arise concerning your sexual behavior or sexual promiscuity as they might relate to the issue of custody?

A. No.

Q. Had no reason or no cause for concern?

A. No.

Q. Within one week or two weeks at most of this occurrence, did you have a conversation with [your husband] concerning this event?

A. It was about a week after it happened.

Q. You talked with [him]?

A. Yes.

Q. Where did that take place?

A. At Sheryl's.

Q. And you advised him or described at that time, did you not, that Darrel Blackford had arrived at your trailer, entered through the front door and that the acts of intercourse had taken place on the living room floor?

A. No.

Q. You never made those statements?

A. No.

Q. Did you make anything close to those statements?

A. All I said was that he had raped me and I didn't go into detail with him, because I didn't think it was any of his concern.

The victim's husband was called as a witness by the defendant, and the following colloquy took place:

Q. Have your desires to place in issue the question of custody about the children been motivated in whole or in part by your knowledge of any promiscuous sexual behavior on the part of [your wife]?

A. Yes.

. . . .

Q. [A]pproximately a week after the occurrence in this case did you have occasion to discuss the matter with [your wife]?

A. No, sir.

Q. Did you have a discussion with her about what had happened?

A. Yes.

Q. And what did she advise you had occurred?

MR. CRISWELL: Your Honor, the State is going to object to this question. It calls for incompetent testimony and this witness is incompetent under Section 622.9 of the Code. This matter has already been gone into in chambers outside the presence of the jury.

THE COURT: Sustained.

MR. DOPF: Your Honor, since this would be the final question of the witness, I would request to make an offer of proof.

THE COURT: Very well.

In his offer of proof, the defendant inquired of the victim's husband as to what she had told him about the alleged attack. He responded that she told him she had admitted the defendant through the front door of the mobile home and that the sexual attack had taken place in the living room near the front door.

The defendant urges as grounds for reversal that because no objection was made when the victim testified as to what she had or had not told her husband about the attack, both the victim and the State waived any basis for relying on the marital privilege as a basis for excluding the husband's version of the conversation. In its brief, the State tacitly concedes that the defendant is correct with respect to this contention but it urges that the trial court's ruling excluding the evidence was nonetheless correct for other reasons.

■ We are committed to the view that when an objection is sustained to testimony properly excludable for any reason, a reversal will ordinarily not result from the fact that the wrong objection was made. *State v. McCowen,* 297 N.W.2d 226, 227 (Iowa 1980); *State v. Pepples,* 250 N.W.2d 390, 393 (Iowa 1977); *State v. Rush,* 242 N.W.2d 313, 320 (Iowa 1976); *State v. Kidd,* 239 N.W.2d 860, 864 (Iowa 1976). The result may be otherwise, however, if it appears that the correct objection, if stated, could have been obviated at trial. *See McCormick's Handbook of the Law of Evidence* § 52, at 117–18 n. 61 (2d ed. E. Cleary 1972). The State urges in the present case that even if the proffered testimony of the victim's husband in regard to her prior inconsistent statements was not excludable on the ground of privilege, it was nonetheless inadmissible as attempted impeachment on a collateral matter. We agree with this conclusion and do not believe that exclusion on this ground could have been obviated at trial.

■ If the excluded testimony is viewed solely as an attempt at impeachment based upon the subject matter of the prior inconsistent statement, the testimony is clearly collateral to the issues in the case. This is

because there was no issue at trial concerning which door the defendant entered or the room in which the sexual encounter took place. Defendant contends, however, that the purpose of the excluded testimony was not to impeach the victim's testimony concerning the subject matter of the prior inconsistent statement. Rather, he urges, it was offered to show that the victim was inclined to falsify the circumstances of the encounter so as to minimize any negative effect it might have in her child custody dispute with her husband. Assuming that the excluded testimony would aid the suggested theory of impeachment, we believe it is nevertheless too collateral to provide a basis for reversal.

Probably the most thorough review which we have undertaken concerning the limits of impeaching witnesses based on prior inconsistent statements is contained in *State v. Gilmore*, 259 N.W.2d 846, 853–58 (Iowa 1977). We there approved the rule found in several authorities discussed in the opinion that the true test as to collateralness is "could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction." *Gilmore*, 259 N.W.2d at 853.

In explanation of this principle we identified two categories of evidence which fall within the rule: (1) facts relevant to some issue in the case, and (2) facts discrediting the witness in respect to bias, corruption, skill, knowledge, or motive to falsify. We have already concluded the subject matter of the contradiction in the present evidentiary squabble is clearly not relevant to any issue involving the merits of the criminal charge against the defendant. It therefore does not fall under the first category approved in *Gilmore*. To the extent that the excluded evidence supports defendant's theory of discrediting the witness based on a motive to falsify, it is not evidence which would be admissible independently of the contradiction. *See* IIIA Wigmore Evidence § 1020, at 1011 (Chadbourne rev. ed. 1970); *Gilmore*, 259 N.W.2d at 853. It therefore fails to qualify as to either category of evidence which is not collateral under the *Gilmore* standards.

We conclude that although the objection which was sustained was not based on a proper ground, the evidence was nevertheless properly excluded. As a result, no reversible error may be predicated on this ruling by the trial court.

II. *Failure of the Marshalling Instruction to Require a Finding of Criminal Intent.*

■ Defendant's second assignment of error concerns the marshalling instruction in which the trial court advised the jury of the elements which the State was required to prove beyond a reasonable doubt in order for the defendant to be found guilty. Defendant asserts that this instruction erroneously omitted any requirement that the State establish that the defendant acted with criminal intent.

The marshalling instruction given in the present case was as follows:

### INSTRUCTION NO. 8

You must find the defendant not guilty of Sexual Abuse in the Third Degree, unless the State proves by evidence beyond a reasonable doubt, each of the following elements:

1. That on or about the 18th day of October, 1981, the defendant performed a sex act, as that term is explained in Instruction No. 9, with [the victim].

2. That the sex act was performed by force or against the will of [the victim].

3. That the defendant was not, at the time of the sex act, living with [the victim] as husband and wife.

If you find the State has proved beyond a reasonable doubt each and all of the elements, then you will find the defendant guilty of Sexual Abuse in the Third Degree; but, if you find the State has failed to prove beyond a reasonable doubt one or more of the elements, then you shall find the defendant not guilty.

In another instruction, the trial court advised the jury:

## INSTRUCTION 11A

To constitute the crime charged in the Trial Information there must be the joint operation of two essential elements, an act forbidden by law and an intent to do the act. To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful.

"Intent" or "intentionally" refers to the state of mind of the defendant and means that a person did an act voluntarily, without duress, coercion, ignorance, mistake of fact, or through accident, inadvertence or other innocent reason.

In determining the intent of any person, you may, but are not required to, infer that the person intended the natural and probable consequences which ordinarily follow such voluntary acts.

In his argument on appeal, defendant relies on *State v. Watts*, 223 N.W.2d 234, 237 (Iowa 1974), a concealed weapons prosecution where we held it was erroneous to instruct on the nature of the weapon which the statute proscribed in a separate instruction rather than in the marshalling instruction. By analogy, defendant urges that it was reversible error in the present case to fail to include in the marshalling instruction a requirement that the jury make a finding of general criminal intent in order to return a verdict of guilty.

We need not reach the merits of defendant's argument concerning this alleged instructional error. No objection was lodged to the giving of the trial court's marshalling instruction on the basis that it failed to require a finding of general criminal intent. In *State v. Rouse*, 290 N.W.2d 911, 914–15 (Iowa 1980), we announced that in all criminal cases in which trial was commenced after the filing of that opinion, Iowa Rule of Criminal Procedure 18(7)(f) would be interpreted so as to require that objections to jury instructions must be made prior to jury arguments unless the instructions are later modified. Failure to comply with this requirement is a waiver of any right to assert instructional error as a ground of appeal. *Id.* at 914; *State v. Beeman*, 315 N.W.2d 770, 775–76 (Iowa 1982). Application of this rule precludes our consideration of defendant's claim of instructional error.

Defendant urges us to hold that failure to include an essential element of the crime in the marshalling instruction constitutes reversible error even in the absence of proper objection. We declined to take this approach in *State v. Ware*, 271 N.W.2d 485, 486 (Iowa 1977) where an essential element of a concealed weapons charge, *i.e.*, a finding that the accused intended to use a statutorily unspecified weapon as a weapon, was not only omitted from the marshalling instruction but was not included in any of the instructions. The primary concern in that case, as evidenced by the dissenting opinion, was the fear that a conviction of a defendant under such circumstances may be considered to be a conviction "of a crime the jury did not find he committed." In spite of such concerns, a majority of the court upheld the conviction finding that the defendant failed to comply with well-established procedural rules.

In the present case, the defendant does not claim that the jury was not instructed as to all elements of the crime but only that one element was the subject of a separate instruction rather than being included in the marshalling instruction. We therefore find the present case to be less compelling than *Ware* for excusing defendant's failure to follow well-established procedural rules. We hold the defendant failed to preserve any issue for our consideration concerning the marshalling instruction which the trial court gave the jury.

### III. *Claim of Incompetency of Trial Counsel.*

██ Defendant's final argument in support of his claim that he should be granted a new trial is an assertion that the failure of his trial counsel to request that the element of criminal intent be placed in the marshalling instruction deprived him of

his constitutional rights to effective assistance of counsel. In evaluating this claim, we apply a standard which seeks to determine whether under all circumstances counsel's performance was within the range of normal competency. *State v. Aldape,* 307 N.W.2d 32, 41–42 (Iowa 1981); *State v. Sunclades,* 305 N.W.2d 491, 495 (Iowa 1981). In addition to showing a performance of counsel below the range of normal competency, a defendant must also show prejudice. *State v. Combs,* 316 N.W.2d 880, 884 (Iowa 1982); *Aldape,* 307 N.W.2d at 45.

In applying these principles to the present claim of ineffective assistance of counsel, we are convinced that not every right to insist that a particular instruction be given need be availed of by counsel in order to satisfy the standard of normal competency. In arguing over what elements should be included in a marshalling instruction, defense counsel's primary concern will necessarily be those elements which are essential to the theory of the defense which is being advanced in the particular case. In this regard, defendant urges that exclusion of any essential element from the marshalling instruction makes it easier for the State to secure conviction and that therefore any omission of this type is prejudicial to a defendant. The facial appeal of such an argument is diminished in those situations where practical considerations make it unlikely that the inclusion of a particular element in the marshalling instruction would have produced any difference in the verdict of the jury.

■ In the present case, the fighting issue was whether the sex act between the defendant and the victim was consensual or carried out against the victim's will. It is quite unlikely that a jury would find that an accused who forced a victim to engage in a sex act would not have acted knowingly and intentionally in perpetrating such an act. As stated in 4 J. Yeager & R. Carlson, *Iowa Practice* § 8 (Supp.1983), "In the context of sexual abuse prosecution . . . the act itself is one which is seldom if ever done unintentionally. . . ." Based upon these considerations, we conclude that defend-

ant's counsel could have justifiably concluded that the inclusion of an intent element in the marshalling instruction was of little significance in presenting the defense. Defendant has failed to establish that a constitutional deprivation existed with respect to the performance of his trial counsel.

We have considered all contentions urged by the defendant and find no basis for reversing his conviction. The judgment of the district court is affirmed.

AFFIRMED.