STATE of Iowa, Appellee,

v.

George Ray GOFF, Appellant.

No. 69285.

Supreme Court of Iowa.

Dec. 21, 1983.

Charles L. Harrington, Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., and Michael P. Short, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, SCHULTZ, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal involves two issues in a prosecution on two counts of second-degree kidnapping and two counts of assault while participating in a felony. Defendant Richard Ray Goff was previously convicted on the same charges but we reversed on appeal on an evidentiary issue. *State v. Goff,* 315 N.W.2d 768 (Iowa 1982). He was then retried and convicted again, and he appealed a second time. For simplicity we consider the issues in terms of one of the victims, Clemons. The same considerations apply as to the other victim, Young.

The pertinent portions of the statutes creating these crimes are, as to kidnapping, sections 710.1 and .3 of the Iowa Code (1979):

710.1. A person commits kidnapping when he or she either confines a person or removes a person from one place to another, knowing that he or she has neither the authority nor the consent of the other to do so; provided that to consti-

tute kidnapping the act must be accompanied by one or more of the following:

. . .

2. The intent to use such person as a shield or hostage.

. . .

710.3. Kidnapping where the ... kidnapper is armed with a dangerous weapon is kidnapping in the second degree. Kidnapping in the second degree is a class "B" felony.

The trial information also charged Goff with assaulting Clemons "while participating in a felony, to wit: kidnapping, in violation of Section 708.3 of the Iowa Criminal Code." The relevant portions of the assault statutes are:

708.1. A person commits an assault when, without justification, the person does any of the following:

. . .

2. Any act which is intended to place another in fear of immediate physical contact which will be painful, insulting, or offensive, coupled with the apparent ability to perform the act.

. . .

708.3. Any person who commits an assault as defined in section 708.1 while participating in a felony other than sexual abuse ... if no serious injury results ... is guilty of a class "D" felony.

From sections 710.1 and .3, the following elements of second-degree kidnapping appear, as related to this case:

1. Goff, while armed with a dangerous weapon,

2. confined Clemons,

3. knowing that he did not have authority or Clemon's consent to do so,

4. with intent to use Clemons as a shield or hostage.

From sections 708.1 and .3, the following elements of assault while participating in a felony appear, as related to this case:

1. Goff, without justification,

2. committed an act,

3. intended to place Clemons in fear of immediate physical contact which would be painful, injurious, insulting, or offensive,

4. with apparent ability to perform the act,

5. while participating in kidnapping.

The kidnapping need not have been consummated for Goff to be "participating" in it. *State v. Mead*, 318 N.W.2d 440, 446 (Iowa 1982).

Goff is an inmate of the penitentiary; he worked in the laundry at the time of the events in question. Although he introduced evidence contradicting several of the State's material allegations, from the entire record the jury could find the facts to be as follows.

In accordance with schedule, the inmates including Goff were placed in their cells at about 6:00 p.m. on December 8, 1977. Goff then told a guard he had to return to the laundry to work, and the guard let him out of his cell.

Leonard M. Young, cellhouse captain, was at his desk in the cellhouse. He looked up and saw Goff out of his cell. He called to a guard, Kent L. Clemons, to go up and place Goff in his cell. Clemons testified:

Q. After Mr. Young told you to lock him up, what did you do? A. I went upstairs and informed George Goff that he was supposed to be in his cell.

Q. What happened then? A. He wouldn't go in.

Q. Did he say anything to you? A. Well, he informed me that if anybody was going into his cell, I was going to go.

Q. Then what happened? A. Then he pulled a knife out on me and poked me in the stomach with it. It was in its sheath then. After he did that, he took it out of the sheath. I took off and went down to the desk to inform Leonard Young that—I didn't have a tactical alert system and Officer Young did, and I was going to inform him to push it so we could get some help over there.

Young testified:

Q. What was the next thing you noticed then? A. Well, I went to let someone in at the door and all of a sudden Clemons came down and he says, "He has a knife." And George Goff came down right after that.

Q. And did he have a knife? A. A shank, yes, Sir. It was a shank. A shank is a knife, a homemade knife.

Q. What was he doing when you saw him—Mr. Goff? A. He came down the stairs with Kent Clemons and he told us that he was taking over the cellhouse.

Q. What did you do then? A. Well, I pushed my beeper.

. . .

Q. What happened next after you pushed your beeper? A. He told us to go into a cell, which was on C Range.

Q. Now, by "he", you're referring— A. Mr. Goff.

Q. Did he have his knife in his hand at that time? A. Yes, Sir.

Q. What was he doing with it, do you remember? A. He had it out and he told us to get into a cell.

The Court: Speak up.

A. He pushed us into a cell.

. . .

Q. Did you go into that cell voluntarily? A. No, Sir.

Q. Silly question. Was he authorized to put you in that cell? A. No, Sir.

Q. Why did you go? A. Because he told us to go.

Q. He had a knife? A. Yes, Sir.

Clemons described this part of the incident thus:

Q. Did he have a knife at that time? A. Yes, he did. It was out of his sheath then.

Q. What was he doing with it? A. He put the knife to my throat and informed me that he wasn't—that he was thirty-three years old and he wasn't go-

ing to take no orders from an eighteen year-old punk.

. . .

Q. Did you go into the cell? A. Yes, I did. This happened in the cell.

Q. This was in the cell? A. Yes.

Q. Were you scared? A. Yes.

Goff then took Young to the cellhouse door. Young testified:

Q. When he took you over to the door, did he have the knife with him? A. Yes.

Q. What was he doing with the knife? A. He had it in his hand.

Q. How did he take you over to the door? Did he just say, go over to the door? A. No. He grabbed my arm and took me over to the door.

Q. When he grabbed your arm, did he still have the knife in his hand? A. Yes, Sir.

Q. What was he doing with it? A. He just had it out.

Goff next placed Clemons and Young in a shower room on the second floor. Young testified:

Q. He [Goff] still have the knife out? A. Yes, Sir.

Q. Did he say anything to you as he was taking you up to the shower? A. Yes, Sir.

Q. What did he say? A. He said that if they came and threw tear gas in here that he was going to have to kill us. He said if he couldn't get us with a shank then he would do it with fire.

Q. Were you scared? A. Yes, Sir.

Q. What happened after he put you in the shower? A. Just locked us in and—

Q. How did he lock you in? A. He put a padlock on the cell door.

Q. How long were you in the shower? A. About an hour.

. . .

Q. Would you have gone into the cell if Mr. Goff didn't have a knife? A. No, Sir.

Q. Would you have gone into the shower if he didn't have a knife? A. No, Sir.

Prison officials appeared, Goff was taken into custody, he and the officials discussed grievances he presented, and order was restored.

An assistant attorney general charged Goff in separate counts with second-degree kidnapping of Clemons and Young while Goff was armed with a dangerous weapon, and with corresponding counts of assault upon Clemons and Young while Goff was participating in the felony of second-degree kidnapping. The State also alleged that Goff had been previously convicted of kidnapping and aggravated robbery, and Goff admitted this allegation at trial. Upon trial the jury again found Goff guilty of the kidnappings and assaults. The trial court sentenced him, and he appealed.

Goff presents two propositions in his present appeal. He contends that the assaults were included offenses in the kidnapping charges and that he could not be convicted of both the kidnappings and the assaults. He also contends that his trial counsel did not render effective assistance.

I. *Assaults as included offenses.* Under our rules an accused may be charged with and prosecuted for multiple offenses committed in a single incident. Iowa R.Crim.P. 6(1). That rule states:

> Two or more public offenses which arose from the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a common scheme or plan may be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise. Where a public offense carries with it certain lesser included offenses, the latter should not be charged, and it is sufficient to charge that the accused committed the major offense.

*See Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

The rule is subject to the qualification, however, that an accused who is convicted

of a major offense cannot be convicted of an included offense growing out of the incident. Section 701.9 of the Iowa Code provides:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

Rule 6(2) of the rules of criminal procedure similarly states:

> Upon prosecution for a public offense, the defendant may be convicted of either the public offense charged or an included offense, but not both.

■ A. The initial question on this branch of the case is whether in the present setting the assault of Clemons in the perpetration of the kidnapping of Clemons was an included offense. To be an included offense the assault had to be both "factually" and "legally" included in the kidnapping. *State v. Sangster*, 299 N.W.2d 661, 663 (Iowa 1980).

■ No problem exists here as to the factual test. "The factual test merely requires there be enough evidence introduced at trial to justify the submission to the jury of an instruction on the proposed lesser included offense." *State v. Redmon*, 244 N.W.2d 792, 797 (Iowa 1976). Goff's placing the knife to Clemons' stomach and throat provided substantial evidence for submission of an instruction on an assault, and the evidence was sufficient on kidnapping to warrant submission of the other aspect of the assault charged—assault "in the perpetration of a felony."

■ We have stated the legal test as follows:

> To pass the legal or element prong of our test for lesser included offenses, the lesser offense must be composed *solely* of some but not all elements of the greater crime. *State v. Wales*, 325 N.W.2d 87, 88 (Iowa 1982). The lesser offense nec-

essarily is included in the greater offense if it is impossible to commit the greater offense without also committing the lesser.

*State v. Aswegan*, 331 N.W.2d 93, 97 (Iowa 1983). *See also State v. Wales*, 325 N.W.2d 87 (Iowa 1982); *State v. Webb*, 313 N.W.2d 550 (Iowa 1981). Although the definitions of the legal test in these decisions contain both (a) a comparison of the elements in the greater and lesser offenses and (b) a requirement that the greater crime cannot be committed without committing the lesser crime, situations can arise in which the elements part of the legal test is not fulfilled although the second part of the test is fulfilled—the greater offense cannot be committed without committing the lesser offense. An illustration, under the former criminal statutes, was forcible rape and assault with intent to commit rape (requiring the additional element of specific intent). We considered that problem in a different context in *State v. Johnson*, 291 N.W.2d 6 (Iowa 1980). We held that the legal test was satisfied. Ultimately, therefore, the determinative question under the legal test is whether the greater offense cannot be committed without committing the lesser offense. *State v. Mead*, 318 N.W.2d 440, 446 (Iowa 1982) ("We need only consider the legal step. Under that step, the question is whether the greater offense cannot be committed without committing the lesser offense."). If the greater offense cannot be committed without committing the lesser offense, the lesser offense is legally an included offense. On the contrary, if the greater offense can be committed without committing the lesser offense, the lesser offense is not legally an included offense.

■ Second-degree kidnapping as charged here can be committed without an assault. In a prison, for example, an armed inmate could confine a guard by trick, or he could lock up a guard who is already in a cell. As a legal matter, therefore, assault is not "necessarily" included in kidnapping.

Goff advances an argument involving another aspect of the legal test: the *basis* on which the test is applied, that is, whether it is applied on the basis of the statute, the charge, or the evidence. He contends that under the State's evidence in this case the confinement of Clemons was accomplished by assault—the State adduced evidence that Goff put a knife to Clemons' stomach and throat. He argues that whether a lesser offense is legally included should be determined by the actual evidence in the case. Goff is in fact advancing the "evidentiary" or "ad hoc" basis of applying the legal test, advocated by the dissenters in *State v. Everett*, 157 N.W.2d 144, 149–50 (Iowa 1968). *See State v. Hawkins*, 203 N.W.2d 555 (Iowa 1973); *State v. Habhab*, 209 N.W.2d 73 (Iowa 1973). This court, however, now uses as the basis the statutory definition of the crime in question or, if the statute contains alternatives, we use the alternative the state elects to use in the case. *State v. Wales*, 325 N.W.2d 87, 89 (Iowa 1982) ("if the State elects to use only *part* of a statute in charging a public offense, then what the State charges *is* the statute for that case").

We are aware of commentators' advocacy of the evidentiary basis. Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 312–22 (1979–80); Comment, *The Lesser Included Offense Doctrine in Iowa: The Gordian Knot Untied*, 59 Iowa L.Rev. 684, 700 (1974) (describing our basis as employing "legislative hypotheticals" rather than what actually happened). We remain satisfied, however, with our present basis.

■ B. The other question on this branch of the appeal is whether the State unconstitutionally prosecuted Goff twice for the same offense. That question must be answered in the negative under *Missouri v. Hunter*, —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). *See also State v. Parker*, 342 N.W.2d 459 (Iowa 1983).

II. *Effective assistance of counsel.* Our quotation from the definition in section 710.1 of the Code reveals that kidnapping is a specific intent crime. Confinement or removal without consent or authority does not alone constitute the crime. The section contains a proviso: "the act must be accompanied by one or more of the following;" —then follow five specific intentions, one of which, as the State claims here, is "The intent to use such person as a shield or hostage." (The State alleged the use of a dangerous weapon in order to charge kidnapping in the second degree; hence that element also is involved in the case.)

■ We have set out the four elements of the kidnapping offense charged. Goff denied committing the offense and also asserted the defense of compulsion. As the trial court deemed the evidence of that defense sufficient for submission to the jury, the State had five propositions to establish as to kidnapping: the four propositions we have stated and an additional proposition negating compulsion.

The trial court, however, using the instructions from the first trial, included only four propositions in its marshaling instruction on second-degree kidnapping, omitting the proposition on specific intent:

You must find the defendant not guilty of kidnapping in the second degree unless you find the State has proved by the evidence beyond a reasonable doubt each of the following elements:

1. That on or about December 8, 1979 the defendant intentionally confined Leonard Young and/or Kent L. Clemons.

2. That the defendant did so, knowing he did not have the consent of Leonard Young and/or Kent L. Clemons to do so.

3. That the defendant was armed with a dangerous weapon at the time he confined Leonard Young and/or Kent L. Clemons.

4. That the defendant was not acting under compulsion.

If you find the State has proved beyond a reasonable doubt each and all of the elements, then you will find the defendant guilty of kidnapping in the second degree; but, if you find the State has failed to prove beyond a reasonable doubt one or more of the elements, then

you shall proceed to determine whether the defendant is guilty of kidnapping in the third degree.

At no place in the instruction did the court state that the kidnapping charged required intent to use the victim as a shield or hostage—or any of the other statutory specific intentions. This was a fundamental proposition the State had to establish, and the trial court was obligated to instruct on it sua sponte. *State v. Billings*, 242 N.W.2d 736, 737 (Iowa 1976) ("When an instruction marshals the elements of a crime and mandates conviction upon the State's proof of those elements beyond a reasonable doubt, all essential elements of the crime must be included in the instruction." Reversal for failure to include element of intent to defraud.); *State v. Watts*, 223 N.W.2d 234, 237 (Iowa 1974).

■ The trial court gave counsel an opportunity to examine the proposed instructions and then asked counsel if they had objections to the instructions. The prosecutor had none and defense counsel stated, "No objection, Your Honor." The court then read the instructions to the jury. The jury retired, deliberated, and found Goff guilty as charged. Defense counsel having failed to object to the failure of the court to include the specific intent element in the instructions, defendant could not thereafter raise that objection. *State v. Beeman*, 315 N.W.2d 770, 775–76 (Iowa 1982); *State v. McKee*, 312 N.W.2d 907, 912 (Iowa 1981); *State v. Rouse*, 290 N.W.2d 911, 914–15 (Iowa 1980).

■ The Appellate Defender was appointed to represent Goff on appeal. In this court Goff asserts that in not objecting to the failure of the trial court to require the State to establish that Goff confined Clemons with a specific statutory intent, Goff's trial counsel did not perform "within the range of normal competency," and Goff asserts in addition that he sustained prejudice as a result. *See Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981). Goff had a constitutional right to effective assistance of counsel, *State v. Aldape*, 307 N.W.2d 32, 41–42 (Iowa 1981); the standard of per-

formance is that which we have quoted from *Snethen*.

We recently held that a defendant did not sustain prejudice from the failure of a trial court to include a requirement of general criminal intent in a marshaling instruction. *State v. Blackford*, 335 N.W.2d 173 (Iowa 1983). That case, however, is considerably different from the present one. First, the element was general criminal intent, not specific intent, as here. The crime charged was sexual abuse, and we quoted the dictum that " 'the act itself is one which is seldom if ever done unintentionally.' " *Id.* at 178 (quoting 4 J. Yeager & R. Carlson, *Iowa Practice* § 8 (Supp. 1983)). In contrast, the State did not merely have to prove an intentional kidnapping here; it had to prove the confinement was committed with specific intent to achieve one of the five statutory objectives. Second, the fighting issue in *Blackford* was whether the act was consensual or against the victim's will. Here Goff contested the case on all issues including the intent issue. Finally, in *Blackford* the trial court did give a general intent instruction separately. Here the court did not give a specific intent instruction anywhere. It gave the stock instruction on proof of intent, but no instruction that the State had to establish Goff confined Clemons with a specific intent provided in the statute. In addition to all this, we note that the uniform marshaling instruction on third-degree sexual abuse does not contain an element of intent. II Iowa Uniform Jury Instructions No. 908 (June 1981). In contrast, the uniform marshaling instruction on second-degree kidnapping includes the following:

"(1) That on or about the ____ day of ____, 19__, the defendant (confined ____) (removed ____ from (place) *with intent to (set forth terms of Section 710.1 which is charged and supported by the evidence* )." II Iowa Uniform Jury Instructions, No. 1004 (Nov. 1979) (emphasis added).

Rather than *Blackford,* the present case more closely resembles *State v. Hrbek*, 336 N.W.2d 431 (Iowa 1983). The issue of spe-

cific intent was comparatively as vital here to the defense as the motion to suppress was vital in *Hrbek*. We also note that the United States Supreme Court has held that the element of specific intent can be so significant that a guilty plea cannot stand where the accused was not made aware of that element. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

Additionally, this is not a case in which postconviction proceedings are necessary to develop the circumstances further regarding the failure of defense counsel to object to the instructions. Our words in *Hrbek,* 336 N.W.2d at 436, are appropriate at this point:

> No justification has been suggested and we can think of none that would explain trial counsel's failure to move to suppress the inculpatory statements on voluntariness grounds. We see no way to attribute counsel's omission to mere improvident trial strategy, miscalculated tactics or mistaken judgment. Thus the present record is adequate for decision of the effectiveness issue.

■■■■ Failure of defense counsel to take proper steps regarding instructions may under some circumstances not rise to the level of ineffective assistance of counsel, *Sherrill v. Wyrick,* 524 F.2d 186 (8th Cir.1975), *cert. denied,* 424 U.S. 923, 96 S.Ct. 1134, 47 L.Ed.2d 332 (1976); *Russell v. Peyton,* 207 Va. 469, 150 S.E.2d 530 (1966), and under other circumstances can be so egregious that counsel's performance does not satisfy the constitutional right to effective assistance of counsel. *Arthur v. Bordenkircher,* 715 F.2d 118 (4th Cir.1983); *Lunce v. Overlade,* 244 F.2d 108 (7th Cir. 1957), *second appeal, Lunce v. Dowd,* 261 F.2d 351 (7th Cir.1958). The latter is the situation here.

We hold that Goff did not have effective representation by counsel. He is entitled to another trial on the kidnapping charges. The assault convictions stand.

AFFIRMED IN PART, REVERSED IN PART.