**STATE of Iowa, Appellee,**

v.

**Joe Andrew JACKSON, Appellant.**

No. 87–189.

Supreme Court of Iowa.

April 13, 1988.

Rehearing Denied May 6, 1988.

John R. Sandre of Scalise, Scism, Sandre & Uhl, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Ann E. Brenden and Harold A. Young, Asst. Attys. Gen., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

In this appeal, we are primarily asked to determine whether the district court's order in a prior case dismissing an attempted murder prosecution against defendant, Joe Jackson, precludes a subsequent prosecution for solicitation to commit murder based upon the same criminal incident.

The prior prosecution against defendant was dismissed pursuant to Iowa Rule of Criminal Procedure 27(2)(a) because the trial information against defendant was filed more than forty-five days after his arrest for the public offense of attempted murder. The State then filed a second trial information based upon the same facts, charging defendant with solicitation to commit murder. His attempt to dismiss the second prosecution because of former acquittal was unsuccessful, and the case proceeded to a jury trial. Defendant was convicted and sentenced. He now appeals the district court's denial of his motion to dismiss.

Defendant also asserts that the district court erred in overruling his motion for a mistrial made after the prosecution, questioning defendant's credibility in closing arguments, compared defendant's trial testimony to his postarrest statements to the police.

Finding no merit in defendant's arguments, we affirm.

I. *Background facts and procedures.* Jackson was convicted of solicitation to commit murder in violation of Iowa Code section 705.1 (1985). Evidence produced at his trial indicated that he devised an elaborate scheme to have his wife killed so that he could collect the proceeds from a life insurance policy he took out on her without her knowledge. The weak link in his scheme was the man he employed to do the killing, Robert Kibbe, Jr.

Kibbe owed Jackson a considerable sum of money. Jackson offered to forgive Kibbe's loans and pay him an additional sum if Kibbe would run an unnamed woman off the road and kill her. The woman was Jackson's wife.

Jackson concocted a story, allegedly to frighten Kibbe, in which Jackson said that the money Jackson had loaned to Kibbe belonged to a crime boss from Kansas City. Jackson told Kibbe that the crime boss would overlook Kibbe's failure to repay the loan if Kibbe would act as a "hit man." The plan called for Kibbe to run the woman's car off the road and into a bridge abutment on a local rural highway. If the accident did not kill her, Jackson instructed Kibbe to go back and beat her to death with a lead pipe.

In the meantime, Jackson told his wife to meet him for dinner on the evening of her birthday, April 10, 1986, where he would give her the keys to a new car he planned to buy for her. The restaurant he chose for the birthday dinner was located to ensure his wife would drive down the highway where Kibbe would be waiting.

Kibbe went to the police and exposed the scheme. The police then arranged to have various conversations between Kibbe and Jackson recorded. On the night his wife was to be killed, the police arrested Jackson. He was carefully advised of his *Miranda* rights before questioning.[1] He agreed to and did talk with the police. When asked about the murder scheme, he denied knowing anything about it. He even denied that various taped conversations between himself and Kibbe were about the murder plans.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *reh'g denied,* 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121.

Jackson was arrested on the charge of attempted murder in violation of Iowa Code section 707.11, but the trial information against him was not filed until forty-eight days after his arrest. Citing the forty-five day speedy indictment rule in Iowa Rule of Criminal Procedure 27(2)(a), Jackson moved to have the attempted murder charge dismissed. The charge was dismissed with prejudice by the court.

The State subsequently filed a second trial information charging Jackson with solicitation to commit murder in violation of Iowa Code section 705.1. Defendant pled former acquittal to the charge and moved to have it dismissed. *See* Iowa R.Crim.P. 8(2)(a). His motion was overruled and the case proceeded to trial. Jackson argues that the present case against him should have been precluded by the earlier dismissal and that the court erred by ruling otherwise.

Even if the second prosecution was proper, Jackson contends he should have been granted a mistrial. While testifying, Jackson explained that the entire murder scheme was an unwise plan invented to frighten Kibbe into repaying Jackson the money he owed him. On cross-examination, the prosecution asked Jackson why the version he recited on the witness stand was not given previously when he talked with the police shortly after his arrest for attempted murder. While no objection was made to this cross-examination, defense counsel did request a mistrial when the same question was rhetorically stated to the jury in closing arguments by the prosecutor. Jackson now argues that a mistrial should have been granted because the prosecutor's reference to Jackson's testimony created an inference that Jackson had a duty to give the police his exculpatory explanation while in custody.

II. *Subsequent prosecution arising out of the same occurrence as prior dismissed prosecution.* Defendant raises a number of arguments to support his contention that the solicitation charge against him should have been dismissed because of his prior acquittal. For convenience, some

of his arguments have been subdivided and we address them under separate headings.

A. *Collateral estoppel/episodic immunity.* Jackson argues that the solicitation charge against him unconstitutionally placed him twice in jeopardy for the same offense. *See* U.S. Const. amend. V; Iowa Const. art. I, § 12. His argument in this vein alluded to two well-established doctrines: collateral estoppel and episodic immunity.

■ Collateral estoppel is clearly not at issue here. That doctrine applies to issues of ultimate fact that have been raised and determined in a prior trial. *See Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970); *State v. Sunclades,* 305 N.W.2d 491, 495 (Iowa 1981). Jackson was never tried for attempted murder; therefore, no issue raised in his solicitation trial could be collaterally estopped.

■ Episodic immunity, although related to collateral estoppel, is a distinct legal doctrine. It was advanced by Justice Brennan in his concurring opinion in *Ashe v. Swenson.* Justice Brennan concluded that the double jeopardy clause of the United States Constitution required the prosecution to join all of the charges against a defendant arising out of a single criminal incident in one trial. 397 U.S. at 453–54, 90 S.Ct. at 1199, 25 L.Ed.2d at 481.

That position has never been adopted by a majority of the Supreme Court. While some states have adopted this doctrine, we have repeatedly rejected it. *See, e.g., Sunclades,* 305 N.W.2d at 495; *State v. Birkestrand,* 239 N.W.2d 353, 364 (Iowa 1976) (rejected in the context of double punishment); *State v. O'Kelly,* 211 N.W.2d 589, 593 (Iowa 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). We see no reason now to change our position.

■ B. *Lesser included offense preclusion.* The forty-five day dismissal period of Iowa Rule of Criminal Procedure 27(2)(a) applies to the public offense for which a defendant is arrested and any lesser included offense therein. *Sunclades,* 305 N.W. 2d at 494. The test for inclusion of a lesser

offense was carefully explained in *State v. Goff,* 342 N.W.2d 830, 835–36 (Iowa 1983), and we shall not reiterate that discussion in full here. We stated in *Goff* that both a factual and a legal test of inclusion need to be satisfied. *Id.* at 835 (citing *State v. Sangster,* 299 N.W.2d 661, 663 (Iowa 1980)). Under this record we are only concerned with the legal test.[2]

Jackson argues under this record that solicitation to commit murder is a lesser included offense of attempt to commit murder because the essential elements overlap. The elements of attempted murder listed in Iowa Code section 707.11 are:

1. An act,
2. Which the person so acting expects to set in motion a force or chain of events which will cause or result in death of another,
3. With the intent to cause that death.

Solicitation as defined in Iowa Code section 705.1 is composed of these elements:

1. Commanding, entreating, or otherwise attempting to persuade another to commit a particular felony,
2. With the intent that such felony be committed,
3. Under circumstances corroborating that intent.

Attempting to persuade Kibbe to commit the murder in question, an element in solicitation, is the "act" required in attempted murder according to Jackson. He argues that he could not be guilty of attempted murder in this case without also being guilty of solicitation to commit murder. While this may be true, solicitation is still not a lesser included offense of attempted murder as we define lesser included offenses even in this factual setting.

Statutory crimes in Iowa can be broken down into component elements. If, by subtracting one or more elements of a crime charged against a defendant, the remaining elements form the necessary elements of another crime, the latter crime is a lesser included offense of the crime charged.

*State v. Habhab,* 209 N.W.2d 73, 74 (Iowa 1973). Stated otherwise, the lesser offense must be composed solely of some but not all elements of the greater offense. *Goff,* 342 N.W.2d at 835–36; *State v. Wales,* 325 N.W.2d 87, 88 (Iowa 1982).

Confronted in *State v. Webb,* 313 N.W.2d 550 (Iowa 1981), with the same argument Jackson makes here, we stated:

Although we look to the indictment or information to determine the enumerated statutory definition of a particular offense with which the defendant has been charged, alternative ways of committing a crime *within* an enumerated definition are not similarly treated. This is because the legal test for identifying lesser included offenses depends on the statutory definition of the greater offense rather than the evidence by which the offense may be proved in a particular case.

*Id.* at 552 (citations omitted).

Clearly, murder may be attempted without soliciting another to commit the crime. For example, the "act" in attempted murder could be a direct one by the defendant such as shooting a gun at the intended victim. No other person need be involved. The statutory definition of attempted murder does not include solicitation as a necessary constituent. Removing any one of the elements of attempted murder does not leave the elements necessary to form solicitation to commit murder, nor is solicitation composed solely of some but not all of the elements of attempted murder. Solicitation, therefore, is not a lesser included offense of attempted murder and was not dismissed when the attempted murder charge against Jackson was dismissed.

■ C. *Fundamental fairness.* Jackson also argues that it is fundamentally unfair to allow the State to bring a second prosecution based upon the same incident when it has lost on a prior prosecution. He cites as support two legislatively enumerated purposes behind the Iowa Rules of

2. The factual test asks whether enough evidence has been produced at trial to submit the issue of a lesser included offense to the jury. Because

the attempted murder charge never went to trial, the factual question is not relevant.

Criminal Procedure: fairness in the administration of criminal laws and elimination of unjustifiable delay in pretrial proceedings. Iowa Code § 801.3(2), (3).

Defendant's position presents us with nothing new. The same argument he presents was raised in *State v. Combs*, 316 N.W.2d 880, 882 (Iowa 1982). Even though the evidence in *Combs* was the same in both prosecutions, we found nothing unfair about the State bringing a second prosecution on failure of the first. *Id.; see also State v. Cook*, 261 Iowa 1341, 1348, 158 N.W.2d 26, 30 (1968) (neither fundamentally unfair nor unconstitutional for state to prosecute different offenses arising out of same occurrence at consecutive trials).

The defendant's suggestion that he is paying for the State's error is without merit. To the contrary, because of a three-day delay in filing the trial information against Jackson, the State lost the opportunity to prosecute him for attempted murder, a class "B" felony. *See* Iowa Code § 707.11. The State was thereby reduced to prosecuting Jackson for solicitation, a class "D" felony. *See* Iowa Code § 705.1.

■ III. *Motion for mistrial grounded on prosecutor's alleged reference to defendant's postarrest silence.* Finally, Jackson complains that his motion for mistrial made during the prosecution's closing argument was erroneously overruled.

Defendant moved for a mistrial when the prosecutor, referring to the version of the facts Jackson offered for the first time on the witness stand, rhetorically asked the jury in closing argument why Jackson had only now disclosed this story. Jackson argues that this prosecution argument impermissibly inferred that he had a duty to communicate his exculpatory story to the police while in custody.

First, as the State urges, defendant's motion for mistrial was not timely and preserved no error. After Jackson gave his exculpatory story on direct examination, the prosecution on cross-examination asked him why he had failed to tell his story previously when he gave several contradictory statements to the police after his arrest. Defendant did not object. Neither did defendant object to the prosecutor's follow-up inquiries along these lines.

"A mistrial motion must be made when the grounds therefore first became apparent." *State v. Cornelius*, 293 N.W.2d 267, 269 (Iowa 1980); *State v. Ware*, 205 N.W. 2d 700, 702 (Iowa 1973); *see also United States v. Laughlin*, 772 F.2d 1382, 1391 (7th Cir.1985) (attorney rebuked for objecting to statement in closing argument after allowing cross-examination to develop that evidence). Defendant should have moved for a mistrial when the prosecution first asked the allegedly prejudicial questions. In closing argument, the prosecution's statement merely referred to testimonial evidence admitted during the trial without objection.

Further, we do not believe that the prosecution's statement implied anything about Jackson having a duty to give his current story to the police at an earlier time. The rhetorical question put to the jury went to Jackson's credibility. *Cf. Anderson v. Charles*, 447 U.S. 404, 408–409, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222, 227 (1980) (similar prosecution statement "not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement").

As defendant admits, questioning inconsistencies between one story given by a defendant at trial and an earlier story given by that defendant after arrest when *Miranda* warnings were given is fair play. In the factually similar case of *State v. Bass*, 349 N.W.2d 498 (Iowa 1984), we stated:

> [W]here, as here, defendant disregards his right to remain silent and openly and voluntarily engages in conversation about the events leading up to his arrest, including a general denial of his guilt, the concern for preserving the constitutional protections of one who has relied on such protections is no longer present.

*Id.* at 503. The above analysis applies here. Even if the defendant's motion for a mistrial had been timely made, it would not have been error to overrule it.

IV. *Disposition.* For the reasons stated, we find no error in the decisions by the district court to overrule defendant's motion to dismiss the solicitation charge against him and to overrule his motion for a mistrial. Accordingly, we affirm.

AFFIRMED.