# IN THE COURT OF APPEALS OF IOWA

No. 13-1573
Filed November 26, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSEPH D. CERETTI,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Glenn E. Pille, Judge.

Joseph Ceretti appeals following his pleas of guilty to attempt to commit homicide, voluntary manslaughter, and willful injury causing serious injury. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, John P. Sarcone, County Attorney, and Jaki M. Livingston, Assistant County Attorney, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

Joseph Ceretti appeals following his pleas of guilty to attempt to commit murder, voluntary manslaughter, and willful injury causing serious injury, and the consecutive sentences imposed. He contends the three convictions should have merged. Ceretti's claims are based upon the premise that an element of voluntary manslaughter is the specific intent to kill. Because voluntary manslaughter does not include the element of a specific intent to kill, the defendant's merger claims fail, and we affirm.

**I. Background Facts and Proceedings.**

According to the minutes of testimony, sometime after midnight on November 26, 2012, Loretta Atwood and her daughter discovered Eric Naylor bleeding in the street near East 17th and Walnut in Des Moines, Iowa. They stopped to help and determined he was still alive but could not speak. Several other people in the area came over to help and called 911. Atwood and her daughter told police that right before they found Naylor, they saw a man running away from the scene.

Naylor suffered "stab wounds to the left upper chest just below the nipple and to the left back." Although medics attended to him, Naylor died on the scene. Over the next few days, police investigation revealed that Naylor had been with three others on the night of November 25 to 26, including his roommate David Tumea, Joseph Ceretti, and another acquaintance, Joseph Loterbouer Jr. Earlier in the evening, Ceretti and Loterbouer came to Naylor's house. Ceretti and Naylor had a disagreement about whether Ceretti had taken Naylor's wallet. They spoke privately, and then Naylor told his girlfriend he was

going to get some money to buy marijuana. The four men left at the same time—Tumea and Naylor in Tumea's car, and Ceretti and Loterbouer in Loterbouer's truck. Tumea told police that they made a few stops, and finally Naylor got out of his car near East 16th and Walnut. Tumea left the area, and when he returned he heard people talking about a "CPR in progress." He saw police and decided to drive home. Once there he told Naylor's girlfriend that he thought Naylor might be hurt.

Loterbouer told police the four of them drove to the east side to visit Naylor's friend and that he did not know anything about a drug deal. He said that he dropped Ceretti off in the area of East 17th and Walnut around 12:30 a.m. and then left to take his child to his girlfriend. When he returned, he found Ceretti and drove him to Susan Bishop's house, where they stayed the night. He told police that he did not witness a stabbing but that he believed Ceretti killed Naylor. He said he had overheard Ceretti tell someone on the phone that Naylor attacked him with a chain and made a reference about needing a new knife "in case I get in the same predicament that I got into the other night."

Brandon Farrell told police that he lives near where Naylor was found and that on the night at issue, he looked out his kitchen window and saw two men in the road, a smaller one and a bigger one who was staggering around. He assumed the bigger man was intoxicated. When he looked out again, he saw the same two men, but the bigger one was lying on the ground bleeding.

Susan Bishop told police that Ceretti stayed at her house on November 26, 2012. When police searched her trash cans, they found bloody clothes. Another friend of Ceretti told police that when he heard about Naylor's death, he

asked Ceretti if he had heard about it and Ceretti changed the subject quickly, causing him to speculate that Ceretti was involved somehow.

Ceretti was arrested. When questioned by police, he made several references to self-defense, but police ceased further questioning because Ceretti requested an attorney. Police seized his shoes when he was booked and observed what looked like blood on them.

The State charged Ceretti with first-degree murder in Naylor's stabbing death. A conviction of first-degree murder carries a mandatory sentence of life without the possibility of parole. Ceretti and the State reached a plea agreement. Ceretti agreed to plead guilty to an amended trial information charging him with three counts—attempt to commit murder, in violation of Iowa Code section 707.11 (2011); voluntary manslaughter, in violation of section 707.4; and willful injury causing serious injury, in violation of section 708.4(1)—and that the sentences would be served consecutively for a term of imprisonment not to exceed forty-five years.

At the plea proceeding, to support the voluntary manslaughter plea, Ceretti admitted that on November 26, 2012, he was in an altercation with Eric Naylor. During the altercation he pulled out a knife and intentionally stabbed Naylor due to serious provocation and a sudden passion, and as a result of that stab wound, Naylor died.

In support of the willful injury plea, Ceretti admitted that on November 26, 2012, he was in an altercation with Naylor and he intentionally stabbed Naylor.[1] As a result of being stabbed, Naylor suffered a serious injury. The State clarified with Ceretti that when he stabbed Naylor, he "intended to at least cause him a serious injury."

With respect to the charge of attempt to commit murder, Ceretti entered an *Alford* plea.[2] The district court stated it had reviewed the minutes of testimony and determined a factual basis existed for the plea of guilty to the charge.

The court accepted Ceretti's pleas after finding they were knowingly and voluntarily entered, and that a factual basis existed for each charge, relying on the defendant's statements at the hearing and the contents of the minutes of testimony. Ceretti does not challenge the factual bases on this appeal.

Ceretti waived his time for sentencing, his right to file a motion in arrest of judgment, and the use of a presentence investigation report. Though not bound by the plea agreement, the district court imposed consecutive sentences of twenty-five years for attempt to commit murder, ten years for voluntary manslaughter, and ten years for willful injury.

On appeal, Ceretti contends all three of his convictions are based on the same acts of stabbing and killing Naylor. He argues that because it is impossible to commit voluntary manslaughter without also committing attempt to commit murder, and because willful injury causing serious injury is a lesser-included

---

[1] In *State v. Walker*, 610 N.W.2d 524, 526-27 (Iowa 2000), the defendant argued that willful injury is a lesser-included offense to voluntary manslaughter. The court did not hold the two offenses merge but rather decided the case on another issue.
[2] An *Alford* plea allows a defendant to consent to the imposition of a sentence without admitting to participating in the crime. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

offense of voluntary manslaughter, that the entry of judgment upon all three violates his right not to be subjected to double jeopardy and the convictions and sentences should merge.[3]  He contends his convictions and sentences for attempted murder and willful injury should be reversed and this case remanded for resentencing on the voluntary manslaughter conviction only.

## II. Scope and Standard of Review.

Claims of an illegal sentence may be raised at any time; Ceretti's pleas of guilty in the district court do not prevent him from claiming on appeal that his sentences violate Iowa's merger statute.  *See State v. Halliburton*, 539 N.W.2d 339, 343 (Iowa 1995).  We review a claim of an illegal sentence for correction of errors of law.  *State v. Hoeck*, 843 N.W.2d 67, 70 (Iowa 2014).  To the extent Ceretti raises a constitutional claim, our review is de novo.  *State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012).

## III. Discussion.

Ceretti maintains that attempt to commit murder[4] is a lesser-included offense of voluntary manslaughter.  He also contends willful injury is a lesser-included offense of voluntary manslaughter.  He argues the convictions and sentences should merge into the voluntary manslaughter conviction.  The State argues the defendant should not be allowed to vacate the sentences he affirmatively sought below, contending Ceretti waived the double jeopardy and

---

[3] Ceretti argues that if we find error was not properly preserved with respect to his double jeopardy claim, we should review the issue as one of ineffective assistance of counsel.

[4] While the statutory heading given to the offense by the Code Editor is "attempt to commit murder," the State notes the offense is attempt to commit homicide because the offense lacks the element of malice aforethought.  *See State v. Kehoe*, 804 N.W.2d 302, 312 (Iowa Ct. App. 2011) (observing that the label is "no part of the statutory law of the State").

merger challenges by pleading guilty. The State asks that if we set aside the plea agreement because it violates merger principles, we should restore the parties to their original positions.

Iowa Code section 701.9—our merger statute—provides that "[n]o person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted."[5] This provision "codified the double jeopardy protection against cumulative punishment." *State v. Anderson*, 565 N.W.2d 340, 344 (Iowa 1997). The purpose of the merger statute is to prevent a court from imposing a greater punishment than that contemplated by the legislature. *State v. Lambert*, 612 N.W.2d 810, 815 (Iowa 2000).

To ascertain legislative intent, the court utilizes the legal elements test for lesser-included offenses. *Halliburton*, 539 N.W.2d at 344. The test to "determine whether a crime is a lesser included offense of a greater crime generally inquires 'whether the greater offense cannot be committed without also committing all elements of the lesser offense.'" *State v. Miller*, 841 N.W.2d 583, 587-88 (Iowa 2014) (citation omitted); *see also State v. Caquelin*, 702 N.W.2d 510, 511 (Iowa Ct. App. 2005) (noting that in comparing the elements of both offenses, we must "determine if the greater can be committed without also committing the lesser"). If the greater offense cannot be committed without also committing all elements of the lesser, the lesser offense will merge with the greater—absent legislative intent to impose multiple punishments for a sole transgression. *Halliburton*, 539 N.W.2d at 344.

---

[5] If a defendant is found guilty of two offenses, but one is an included offense of the other, "the court shall enter judgment of guilty of the greater of the offenses only." Iowa Code § 701.9.

To determine what elements comprise a particular offense, the court looks to the statute defining the offense. *State v. Wales*, 325 N.W.2d 87, 88 (Iowa 1982) ("The elements of an offense are determined by the statute defining it rather than by the charge or the evidence."). We compare the statutory elements of the challenged crimes as an aid in applying the impossibility test (i.e., the "strict statutory-elements approach").[6] *See Miller*, 841 N.W.2d at 588; *State v. Jeffries*, 430 N.W.2d 728, 736 (Iowa 1988). A "lesser offense must be composed solely of some but not all elements of the greater offense." *State v. Jackson*, 422 N.W.2d 475, 478 (Iowa 1988) (rejecting claim that solicitation to commit murder was lesser included offense of attempt to commit murder).

Iowa Code section 707.4(1) provides:

> A person commits voluntary manslaughter when that person causes the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain his or her control and suppress the impulse to kill.

In support of the plea of guilty to voluntary manslaughter, Ceretti admitted he was in an altercation with Eric Naylor, during which he pulled out a knife and intentionally stabbed Naylor due to serious provocation and a sudden passion, and as a result of that stab wound, Naylor died.

---

[6] This test is coextensive with the United States Supreme Court's test in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), for determining whether two offenses are the same for constitutional purposes. *State v. Aguiar–Corona*, 508 N.W.2d 698, 701–02 (Iowa 1993).

At the same proceeding, Ceretti entered an *Alford* plea to the offense of attempt to commit murder, which is defined by section 707.11:

> A person commits a class "B" felony when, with the intent to cause the death of another person and not under circumstances which would justify the person's actions, the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person.

Finally, Ceretti pled guilty to willful injury causing serious injury, stating he was in an altercation with Naylor and he intentionally stabbed Naylor, intending to cause him a serious injury. *See* Iowa Code § 708.4 ("Any person who does an act which is not justified and which is intended to cause serious injury to another commits . . . (1) A class "C" felony, if the person causes serious injury to another.").

Here, we compare the elements of the three offenses:

| Attempt to commit murder[7] | Voluntary manslaughter[8] | Willful injury[9] |
| --- | --- | --- |
| An overt act | An act | An act |
| Specific intent to cause the death of another | Person acts solely as the result of sudden, violent, or irresistible passion resulting from serious provocation | Intent to cause serious injury |
| | Death results | Serious injury results |

Ceretti's claims are based upon the premise that an element of voluntary manslaughter is the intent to kill. Certetti argues that because the intent to kill is

---

[7] Iowa Code § 707.11 (a class "B" felony); *see State v. Young*, 686 N.W.2d 182, 185 (Iowa 2004) (noting the statute defines the type of overt act required to be one "by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person" and concluding "'will cause' refers to the actor's expectation of the consequences . . . not the probability of the act's success").

[8] Iowa Code § 707.4(1) (a class "C" felony). Statutorily, voluntary manslaughter is an included offense of first or second degree murder. *Id.* § 707.4(3)

[9] Iowa Code § 708.4 (a class "C" felony if the person causes serious injury, *see id.* § 708.4(1)). Willful injury is not a lesser-included offense of attempted murder because willful injury requires proof of a serious injury. *State v. Clarke*, 475 N.W.2d 193, 195-96 (Iowa 1991).

an element of voluntary manslaughter, one cannot commit voluntary manslaughter without also having committed an attempt to commit murder—which has as an element the intent to cause the death of another, and one cannot intend to cause the death of another without necessarily intending to cause serious injury.[10]

Ceretti finds support for his premise in *State v. Hellwege*, 294 N.W.2d 689 (Iowa 1980), a case in which our supreme court was required to determine that voluntary manslaughter was a forcible felony as that term is defined by statute. The definition of "forcible felony" includes "any felonious assault [or] murder." Iowa Code § 702.11. The narrow question presented in the case was "whether voluntary manslaughter necessarily includes an assault." *Hellwege*, 294 N.W.2d at 690. The court concluded it did, explaining:

> Although no intent element is specified, a requirement of intent to kill may be inferred from the language of section 707.4. "707.4 does not state that its application should be confined to intentional killings, but its references to sudden, violent and irresistible passion, and the impulse to kill, inevitably lead to that conclusion." J. Yeager & R. Carlson, 4 Iowa Practice: Criminal Law and Procedure § 145 (1979).
> Assault is defined in section 708.1 in part as "without justification" doing "(a)ny act which is intended to cause pain or injury to . . . another, coupled with the apparent ability to execute the act." We are satisfied that an individual cannot intentionally kill someone, even though instigated by the heat of passion, without

---

[10] Here, Ceretti cites *State v. Rhode*, 503 N.W.2d 27, 40 (Iowa Ct. App. 1993), where we stated: "We construe death to be the most serious of injuries and in no way to be exclusive of serious injury."

He also cites *State v. Mapp*, 585 N.W.2d 746, 749 (Iowa 1998), where the supreme court concluded conspiracy to commit willful injury merged with conspiracy to commit first-degree murder, stating, "It seems quite apparent that a showing of the elements of willful and premeditated murder necessarily includes the elements of willful injury." *See also* Iowa R. Crim. P. 2.22(3) (allowing the jury to find the defendant guilty of "any offense the commission of which is necessarily included in that with which the defendant is charged"). But these citations are of no import unless we agree with the premise that voluntary manslaughter has as an element the intent to kill.

also doing an act intended to cause injury accompanied by the apparent ability to execute the injurious act.

*Id.* at 691. Ceretti argues that because voluntary manslaughter has an inferred intent to kill, it shares that element with attempt to commit murder, and thus, the offenses merge.

We acknowledge the *Hellwege* language that "a requirement of intent to kill may be inferred." However, the intent to kill is not a statutory element of the offense.[11] Indeed, the statute defines an act that negates any intent to kill. Rather, the statutory elements of the offense are (1) an act, (2) which is the result of sudden, violent, and irresistible passion resulting from serious provocation, and (3) the victim died as a result of that act. *See* Uniform Criminal Jury instruction 700.15.[12]

Because attempt to commit murder and willful injury each has an element different from voluntary manslaughter, the offenses do not merge.

Ceretti argues the factual bases established during the plea proceeding and the minutes of testimony "do not indicate Ceretti did anything other than stab

---

[11] The statute requires that there not be sufficient time "in which a person of ordinary reason and temperament would regain his or her control and suppress the impulse to kill," Iowa Code § 707.4, and recent case law discusses what interval is adequate to "suppress the *impulse* to kill." *See State v. Thompson*, 836 N.W.2d 470, 477 (Iowa 2013) (emphasis added) (noting voluntary manslaughter passes the "legal test" to be considered a lesser offense of first- and second-degree murder because Iowa Code section 707.4 defines it as such).

[12] Instruction 700.14 provides:

1. On or about _____ day of _____, [20]___, the defendant intentionally [shot] [struck] [appropriate word or phrase] (victim).

2. (Victim) died as a result of being [shot] [struck] [appropriate word or phrase].

3. The [shooting] [striking] [appropriate word or phrase] was done solely by reason of sudden, violent and irresistible passion resulting from serious provocation.

Naylor or that Naylor suffered any injuries in addition to the stab wounds that caused his death." But he does not challenge that a factual basis for each offense has been shown. His argument is really one of overlapping proof, which we find unconvincing because the test compares the statutory definitions of each offense rather than the facts presented in a particular case. *See Clarke*, 475 N.W.2d at 195 ("It is this "overlap in the proof" that is really at the heart of defendant's argument."); *State v. Clark*, No. 10-1767 2011 WL 6076540, at *4 (Iowa Ct. App. Dec. 7, 2011) (rejecting defendant's argument because "the test compares the statutory definitions of each offense rather than the facts presented in a particular case").

Because voluntary manslaughter does not include the element of a specific intent to kill, the defendant's merger claims fail. We affirm.

**AFFIRMED.**