**STATE of Iowa, Appellee,**

v.

**David Carl OPPELT, Appellant.**

**No. 67842.**

Supreme Court of Iowa.

Jan. 19, 1983.

Duane L. Rohovit and Philip M. Reisetter, Iowa City, for appellant.

Thomas J. Miller, Atty. Gen., Teresa Baustian, Asst. Atty. Gen., and J. Patrick White and Janice Becker, Asst. County Attys., for appellee.

Considered by REYNOLDSON, C.J., and LeGRAND, UHLENHOPP, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Defendant David Carl Oppelt appeals from his conviction by jury and sentence for second degree murder in violation of sections 707.1 and 707.3, Iowa Code (1981). The appeal presents four issues: admissibility of evidence of the stabbing of a third person, alleged State suppression of exculpatory evidence, sufficiency of the evidence for submission of the case to the jury, and the alleged duty of the court to instruct the jury on the effect of an acquittal based on the insanity defense. We resolve all these issues against defendant's contentions and therefore affirm the trial court. We also comment on an appellate rules violation.

At approximately 6:00 p.m. on May 27, 1981, defendant entered a Quik Trip store in Iowa City and purchased a candy bar. Three young men, Robert Palmer, Blaine Evans and Steven White were also in the store. They were playing electronic game machines down the aisle from where defendant made his purchase. After starting to leave the store, defendant looked toward the young men and then walked down the aisle toward them. While doing so, he unwrapped a package containing a sheathed knife he had purchased earlier at J.C. Penney's. He removed the knife from its sheath and stabbed Blaine Evans in the back of the shoulder. Evans fled, and defendant then started stabbing White, knocking him to the floor and continuing the attack until White was fatally wounded. When defendant stopped stabbing White, he walked to the door, dropped the knife, and started jogging away across the parking lot. Two men who had seen the attack chased him and caught him.

After his apprehension defendant began to display symptoms of what psychiatrists

later diagnosed as a catatonic stupor. He became mute, passively rigid, and seemed unaware of events around him. During the evening a hearing was held at the police station concerning whether he should be hospitalized because of mental illness. Upon the testimony of Iowa City psychiatrist Dr. Vernon Varner, who said defendant was grossly psychotic and dangerous to himself and others, Judge L. Vern Robinson found defendant to be seriously mentally impaired and ordered him committed to the Iowa Medical Security Facility at Oakdale for treatment. Defendant remained there until trial.

At trial defendant asserted an insanity defense, and a battle of psychiatrists ensued. The case was submitted to the jury which returned a second-degree murder verdict. Following sentencing, defendant appealed.

I. *Admissibility of evidence of the stabbing of Blaine Evans.* By motion in limine and timely objection at trial, defendant challenged the admissibility of evidence of the stabbing of Blaine Evans which occurred just before the fatal stabbing of White. This evidence was plainly admissible on at least two grounds.

The most obvious ground is that the stabbing of Evans was so close in time and place to the stabbing of White that it was an inseparable part of the whole deed. When acts are so closely related in time and place and so intimately connected that they form a continuous transaction, the whole transaction may be shown to complete the story of what happened. *State v. Drake,* 219 N.W.2d 492, 494 (Iowa 1974). The trial court did not abuse its discretion in admitting the evidence on this ground.

A second ground of admissibility also exists. The record showed that Evans and another youth had robbed defendant earlier in the day. This evidence tended to establish a motive for the stabbing of Evans and to negate the defense theory that the entire incident was the purposeless product of an insane mind. Proof of motive is a recognized exception to the general rule excluding other crimes evidence. *State v. Conner,* 314 N.W.2d 427, 429 (Iowa 1982). This ground also sufficiently supports the trial court's ruling.

II. *Alleged suppression of exculpatory evidence.* By pretrial motion defendant obtained a discovery order requiring the State to produce any statements by the defendant and the "reports, notes, or records of any State psychiatrists or anyone working as agents of these persons concerning the Defendant." Trial commenced on September 21, 1981. While the trial was in progress, on September 29, 1981, a police detective interviewed personnel at the medical security facility regarding defendant's conduct there. Subsequently the detective prepared written summaries of five interviews and furnished them to the county attorney on October 1, 1981. When the county attorney received the documents, he immediately arranged for copies to be delivered to defense counsel. For some reason not explained in the record, defense counsel did not receive them until October 6, 1981. The trial was still in progress and the defense was presenting its evidence. Defendant moved for mistrial on the ground of State suppression of exculpatory evidence and violation of the pretrial discovery order. After reviewing the materials, the trial court overruled the motion.

Defendant did not request a continuance or delay, nor did he seek at any time either to cross-examine either of two State psychiatrists (who both testified on rebuttal) about the materials, to examine his own psychiatric witnesses about them, or to introduce them as evidence, despite opportunity to do all of these things.

Principles governing a claim of suppression of exculpatory evidence are delineated in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). They have been applied in many of our cases and are reviewed in *Fryer v. State,* 325 N.W.2d 400, 406–08 (Iowa 1982) and *Hamann v. State,* 324 N.W.2d 906, 907–10 (Iowa 1982). We will not repeat them here.

■ Neither a violation of the pretrial order nor suppression has been demonstrated here. Even assuming the discovery request was sufficiently specific to require production of the documents, the documents were in fact produced. We have no basis for finding under this record that the State did not produce the documents as soon as practicable after they came into existence. Moreover, they were produced at trial while defendant still had ample opportunity to use them if he chose to do so. Suppression in the constitutional sense did not occur. *See United States v. Ziperstein,* 601 F.2d 281, 291 (7th Cir.1979), *cert. denied,* 440 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980); *State v. Hall,* 297 N.W.2d 80, 92 (Iowa 1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981); *State v. Epperson,* 264 N.W.2d 753, 757 (Iowa), *cert. denied,* 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978).

■ We also find the record insufficient to demonstrate the materiality of the evidence under the *Agurs* principles. Assuming exculpatory evidence that had been specifically requested was suppressed, the conviction is unaffected unless it appears the suppressed evidence would have affected the outcome of the trial. *See State v. Love,* 302 N.W.2d 115, 123 (Iowa 1981). We find the evidence largely cumulative and tangential. In some respects it would strengthen the State's case, and in others it would support the defense. On balance, considering the entire record, we are not convinced it would make any difference in the outcome of the case. This is evidently the conclusion reached by defense counsel when they elected not to use the evidence.

The trial court did not err in overruling the motion for mistrial.

■ III. *Sufficiency of the evidence.* Defendant contends the trial court erred in overruling his motion for acquittal at the conclusion of the State's case in chief and at the conclusion of all the evidence. He cannot predicate error on the court's ruling on the first motion, because the sufficiency of evidence for jury submission is determined by consideration of all the evidence in the record. *See State v. Holderness,* 293 N.W.2d 226, 230 (Iowa 1980). Applicable principles are delineated in *State v. Mulder,* 313 N.W.2d 885, 888 (Iowa 1981).

Essentially defendant asserts the evidence was insufficient to permit the jury to find the State met its burden to prove his sanity.

■ Eyewitnesses to the homicide and subsequent events uniformly testified to defendant's bizarre behavior during and after the incident. No one disagreed he was mentally ill and entered a catatonic stupor after his apprehension. It was the State's theory, however, that although defendant was mentally ill he was not insane within the meaning of Iowa Code section 701.4. Two State psychiatrists offered testimony in support of that theory. One was less positive than the other, but the probative force of their testimony was for the jury to decide. The State also offered lay witnesses in an effort to show defendant engaged in purposeful activity, including his purchase of the knife, shortly before the killing.

Defendant introduced testimony of several lay witnesses, two psychiatrists, and a psychiatric resident. The defense theory was that defendant was in an excited catatonic state at the time of the stabbing and was therefore incapable of knowing the nature and quality of his act and was incapable of distinguishing between right and wrong with respect to it. His evidence supported this theory.

Under the whole record, however, substantial evidence was adduced to show defendant's sanity. Although the case was undoubtedly a difficult one for the jury, the issue was properly submitted to the jury. The trial court did not err in refusing to order acquittal.

■ IV. *The requested instruction on the effect of the verdict.* Defendant requested and the trial court refused to give an instruction that would have informed the jury of the effect of a verdict of not guilty by reason of insanity as follows:

In the event of a verdict of not guilty by reason of insanity, you have nothing to do with the commitment of the defendant to a hospital for treatment. Iowa law specifies the process by which the mentally ill who are determined to be seriously mentally impaired and a danger to themselves or others are involuntarily hospitalized. That decision rests solely with the Court.

In *State v. Hamann,* 285 N.W.2d 180, 185–86 (Iowa 1979), this court held in accordance with the majority rule in the United States that refusal of such an instruction is not error. We adhere to that holding.

No reversible error has been shown.

V. *The appellate rules violation.* We add one final note that does not concern the merits of the appeal. It relates to the recurring practice in criminal appeals of printing virtually the entire transcript in the appendix. If anything in the transcript was omitted from the appendix in the present case, we are unable to discern what it might be. The appendix includes many proceedings that are entirely unrelated to any issue in the appeal. For example, it contains a deputy clerk's explanation to the jury of various housekeeping details such as parking and compensation arrangements. Moreover, even though a challenge to the sufficiency of evidence is involved, much of the testimony could have been eliminated without any loss of impact. No effort was made to delete preliminary or background testimony or cumulative testimony of the same witness.

■ Iowa R.App.P. 102 makes the appellate rules governing civil appeals applicable to criminal appeals to the extent not inconsistent with statute. The appendix prescribed by the civil rules constitutes what formerly was an abstract of the record. Iowa R.App.P. 15(a) provides that the appendix is to contain only relevant portions of the record. Under that standard the appendix in the present case is much too long.

Failure to limit the appendix to relevant portions of the record results in two problems. One is unwarranted printing expense and the other is an unwarranted reading burden on the members of the appellate courts. In most criminal appeals the printing expense is borne by the county treasury. In the present case the county was charged $3,385.70 for the printing of the appendix. The reading burden imposed on the appellate courts by overlength appendices contributes to the problems of volume and delay that plague our legal system.

Counsel should employ the same care in preparing the appendix as they do in writing briefs. In both situations they must make a conscientious effort to comply with the appellate rules. Because one copy of the transcript is also furnished for the appellate court's use, the transcript is available for the court's reference when necessary.

We single out the present case as an example of a prevalent practice. We could have selected any number of other cases for this purpose. Therefore the criticism in this case is actually directed at all appellate counsel who have violated the rules in the same respect. In the future, in an appropriate case we will consider providing for reimbursement to the county for excessive printing expenses by offsetting the expense against court-appointed appellate attorney fees.

AFFIRMED.