**STATE of Iowa, Plaintiff-Appellee,**

v.

**Samuel Robert JOHNSON, Defendant-Appellant.**

No. 84–186.

Court of Appeals of Iowa.

Feb. 26, 1985.

Charles Harrington, Appellate Defender and Raymond E. Rogers, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen. and Joseph P. Weeg, Asst. Atty. Gen., for plaintiff-appellee.

Heard by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ., but considered en banc.

SACKETT, Judge.

Defendant Samuel Johnson appeals from his conviction and sentence for sexual abuse in the second degree in violation of Iowa Code § 709.3(1) contending that the trial court erred in failing to grant his motion for a mistrial.

Defendant allegedly forcibly committed a sex act with a female against her will in the City of Eldora, Iowa.

■ Defendant testified in his own behalf contending at the time in question that he was on the other side of town from where the alleged crime took place. Defendant had on several occasions sexually propositioned his sister-in-law Elaine, who on the night in question was babysitting in the Steinfelt home near the location where the alleged crime was to have taken place. Elaine's son Scott had a conversation with defendant on the day of the alleged crime in which Scott told the defendant he was going to his babysitter's home on the evening in question. Defendant filed a motion in limine to keep out the testimony of Scott and his mother. The trial court overruled the motion. Defendant asked the court if its ruling was a final ruling and whether he needed to make objections during the testimony to preserve the issue for appellate review. The court replied that its ruling was only preliminary because it had not yet heard the actual testimony and required the defendant to make objections in the presence of the jury.

Elaine testified over defendant's objection that in the days and weeks prior to the crime defendant called her twice and talked to her once and said he could force her to go to bed with him. The State then called Scott who testified he told the defendant he was going to his babysitters that night and no one talked about his mother being there. Defendant again moved to strike the testimony, contending the State had failed to supply any connecting link to show defendant's knowledge that Elaine would be at the house in question. The court then sustained the objection. The defendant moved for a mistrial. Trial court refused to grant the mistrial but admonished the jury to disregard the testimony.

The State contends that the testimony was properly admitted because it was admitted not to show that the defendant was a bad person but to show that the defendant had a motive to be near the Steinfelt home. And, that this evidence rebutted the defendant's alibi defense. The State admits that the relevancy of the evidence hinged on the defendant's knowledge that Elaine would be present at the Steinfelt home. The State argues that Scott Maley's testimony established this connection by his conversation with defendant informing defendant that Scott would be babysitting [1] at the Steinfelt home. The inference from this conversation was that defendant would know that Scott was too young to babysit, and his mother would be at the Steinfelt home.

In limited instances, evidence of prior acts has been admitted. *State v. Oppelt*, 329 N.W.2d 17, 19 (Iowa 1983) (Evidence of prior stabbing immediately before fatal stabbing was admissible because it was so close in time and an inseparable part of the whole deed and an act so connected as to form a continuous transaction. The court also considered the fact that the person stabbed and another youth robbed defendant earlier in the day—so first stabbing established motive and negated the defense's theory that the incident was the purposeless product of insane mind.). *State v. Mendiola*, 360 N.W.2d 780 (Iowa 1984). (Fact of earlier conviction of possession with intent to deliver marijuana was admissible in trial for possession of controlled substance with intent to deliver after defendant denied knowing scales could be used to weigh marijuana and earlier conviction tended to prove defendant had knowledge concerning the use of scales). *State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978) (Evidence of defendant's prior sexual relationship with one Edington and evidence of his prior delivery of drugs to her was clearly admissible to show State's theory that delivery of drugs to a shed was in fact a delivery to Edington, and it was vital to the State's case to show defend-ant's visit to the shed was part of a regular scheme or system of criminal activity in which he furnished Edington with drugs).

We fail to find an inference that could be drawn on supposed facts sufficient to support the admission, i.e., there is no basis to assume as the State asks that an 11-year old is too young to babysit, so, if an 11-year old is hired to babysit, his mother will in fact will do the babysitting. Nor can we find that the testimony falls under an exception permitting such evidence when it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, or (5) identity of the person charged with commission of the crime. *See State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978).

Having agreed with the trial court's ultimate determination that the evidence is not admissible, we need next determine the more difficult question of whether the defendant was so prejudiced that a mistrial should have been granted.

In *State v. Jensen*, 216 N.W.2d 369, 373–4 (Iowa 1974) the Iowa court described an overruled motion in limine as a "red flag" whose primary purpose is to avoid disclosing to the jury prejudicial matters which may compel declaring a mistrial. The court said:

> If evidence is improperly admitted but is later withdrawn with a cautionary statement to the jury to disregard it there is no error *except in extreme instances where the prejudicial effect would probably remain to influence the verdict despite its exclusion.* (emphasis original).

The court in *Jensen* found reversible error where the defendant filed a motion in limine seeking to exclude all evidence relating to a breath test because the State had failed to comply with procedures required under the implied consent law. The motion

**1.** Scott's testimony clearly indicated Scott was going to his babysitters. The State treated the issue on cross-examination as if Scott were the babysitter.

was supported by an uncompleted form used by officer when the test was taken. Holding it was reversible error to permit the arresting officer to testify that the officer had asked defendant if he would rather have a blood test or breath test and defendant indicated he would not want the blood test, the court also found an instruction to disregard all testimony on blood or breath test didn't cure the error.

The Iowa court failed to find an extreme instance where it was difficult to understand how withdrawn testimony would prejudice defendant. The stricken testimony was a remark by grocery and gas station owner who was the victim of alleged theft that he had been missing money twice before. *State v. Johnson,* 183 N.W.2d 194, 198 (Iowa 1971).

The court in *State v. Leuty,* 247 Iowa 251, 258, 73 N.W.2d 64, 66–67 (1955) found reversible error in attempts by the attorney for the State (some successful) to get into the record, by indirection, evidence of advances made to other females by a defendant male accused of incest with his daughter.

We determine that the prejudicial effect of the evidence would remain to influence the verdict despite its exclusion.

Finally, the State argues that the prejudicial evidence was of little significance because under all the circumstances it is highly unlikely to have been a determining factor in the jury's decision. The State then points to the fact that (1) the victim gave a nearly exact description of defendant (2) she identified defendant's voice (3) the victim identified defendant as her attacker at trial, in a videotape and lineup (4) based on victim's allegation, she had bitten defendant's hand during rape and a tearing bite wound was found on defendant's hand (5) hair similar to victim's head hair found in defendant's underwear (6) hair similar to defendant's pubic hair found on sheet where victim examined at hospital (7) defendant's blood type was consistent with seminal fluid found in victim, and a shoe print at the scene resembled shoe owned by defendant. A careful reading of the record discloses these facts. However, they were not without dispute. The victim had different stories as to clothing worn by defendant. A dentist testified the hand wound might have been caused by sharp object. We are unwilling to determine the evidence was so overwhelming that we should discard the prejudicial remarks. We wonder why, if the State is so convinced that the evidence would convict, they persisted to taint the record with Elaine's testimony and risk reversal.

We have considered in this determination *State v. Belieu,* 288 N.W.2d 895, 901 (Iowa 1980) where supreme court refused to find a mitigation of the prejudicial effect of evidence of prior criminal activity by the strength of the State's evidence against the defendant where the testimony involved numerous references to other alleged crimes which remained part of the record because of purported relevancy to co-defendant's defenses. The court in *Belieu* said: "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." We consider too, *State v. Trudo,* 253 N.W.2d 101, 108 (Iowa 1977) where the court failed to find defendant rights injured by the incident under scrutiny where the offending question and rather innocuous volunteer answer might tend to show defendant's possession of marijuana was with intent to deliver to others and not personal use, for there was overwhelming evidence that defendant's possession was with intent to deliver and overwhelming evidence which showed he intended to sell it and did.

■ Defendant complains too that the State should have first put Scott on the stand to establish the proper foundation rather than putting on the witness with damaging statement first. While not finding prosecutorial misconduct in the sequence of witnesses, we caution prosecutors to use care to establish foundational

fact prior to bringing out prejudicial testimony.

REVERSED AND REMANDED.

All Judges concur, except DONIELSON, J., who dissents.

DONIELSON, Judge (dissenting).

I respectfully dissent. Initially, I believe that the trial court should have admitted Elaine's testimony since it was relevant to defeat the defendant's alibi defense and show he had a motive for being in the area where the crime was committed. I agree that the relevancy of her testimony hinges on the defendant's knowledge that Elaine might be present at the Steinfelt home. Yet, contrary to the majority opinion, I believe Scott Maley's testimony that he would be babysitting at the Steinfelt home is sufficient to show that such knowledge may have existed. Scott testified that he never babysat alone and would always go with his mother. Since the defendant was related to Elaine Johnson, it is possible that he would have been aware of this and would have expected Elaine to be at the Steinfelt home. Certainly, it is within the province of the jury to draw the inference from the evidence or to discard it as being too tenuous. We cannot say as a matter of law that knowledge cannot be inferred from Scott's testimony. Furthermore, defense counsel would have the opportunity to attack the allegation that the defendant had knowledge during cross-examination and closing argument.

The fact remains that Elaine's testimony coupled with Scott Maley's testimony makes a fact of consequence more probable—that the defendant would be in the area of the Steinfelt home. This is all that is required. It is merely circumstantial evidence to be believed or not believed by the jury. As long as it is probative, there is no reason to exclude the testimony.

Even assuming the testimony was properly excluded, I do not believe sufficient prejudice was shown to require reversal at this point. Trial courts have considerable discretion in this respect since they are in a better position to gauge the effect of the testimony on the jury. *State v. Cage*, 218 N.W.2d 582, 586 (Iowa 1974). In this particular case, the question of prejudice is a close one. I am thus inclined to defer to the trial court's conclusion that any prejudice could properly be eliminated by admonishing the jury. The defendant has not demonstrated Elaine's testimony was so inherently flammable that an admonition would be insufficient. Furthermore, a finding of insufficient prejudice is particularly appropriate in a case such as this when other evidence supporting a conviction is so substantial. The victim identified the defendant as her attacker at trial, in a police videotape of the defendant, and in a photo lineup. The police discovered a wound on the defendant's hand that an expert described as a tearing bite wound. This physical evidence was consistent with the victim's allegation that she had bitten her attacker's hand during the rape. Additionally, other physical evidence found on the victim matched hair and blood samples from the defendant.

In light of this overwhelming evidence, I do not believe that Elaine Johnson's testimony should be characterized as prejudicial. It is highly unlikely that it was a determining factor in the decision of the jury. *See State v. Peterson*, 189 N.W.2d 891, 897 (Iowa 1971).