**STATE of Iowa, Plaintiff–Appellee,**

v.

**Michelle Lynn KEHOE, Defendant–Appellant.**

No. 09–1896.

Court of Appeals of Iowa.

July 13, 2011.

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins and Andrew B. Prosser, Assistant Attorneys General, and Allan W. Vander Hart, County Attorney, for appellee.

Heard by SACKETT, C.J., and VOGEL, VAITHESWARAN, POTTERFIELD, DOYLE and DANILSON, JJ.

DOYLE, J.

Michelle Kehoe appeals from her convictions for first-degree murder, attempted murder, and child endangerment resulting in serious injury. She contends her trial counsel was ineffective in three respects. She first argues Iowa Code section 701.4 (2007), which defines the legal standard for the insanity defense in Iowa, is unconstitutional, asserting violations of the Due Process and Cruel and Unusual Punishment Clauses of the state and federal constitutions. Because her trial counsel did not challenge the constitutionality of section 701.4, she asserts her trial counsel rendered ineffective assistance. Additionally, she argues her trial counsel was ineffective for failing to request a jury instruction on the consequences of a verdict of not guilty by reason of insanity and for failing to object to the marshalling instruction on attempted murder as not including malice aforethought as an element. Upon our review, we affirm.

## I. Background Facts and Proceedings.

On October 26, 2008, Michelle Kehoe drove her two children, seven-year-old S.M.K. and two-year-old S.L.K., in the family's van to a secluded pond near Jessup, Iowa. One by one, she took each child from the van, covered the child's eyes, nose, and mouth with duct tape, and then slit the child's throat with a hunting knife. She then slit her own throat.

Kehoe survived her suicide attempt and regained consciousness early the next day. She made her way to a house located about a half mile away, and law enforcement officers were called. Kehoe told the officers a man had tried to kill her and her children. Based upon Kehoe's report, the officers went to the pond where Kehoe alleged she and her children were attacked. Officers found S.L.K.'s lifeless body near a bush. S.M.K. was found alive hiding in the van. S.M.K. told the officers his mother had taken him to the woods and cut him.

Michelle Kehoe was charged with first-degree murder, attempted murder, and child endangerment resulting in serious injury. At trial, her counsel essentially conceded the State's version of events was correct and relied on the insanity defense. Two experts testified in support of Kehoe's defense of insanity.

Dr. William Logan, M.D., testified that he diagnosed Kehoe with a major depressive disorder. Dr. Logan opined Kehoe was able to understand she was killing herself and her children. However, he testified that Kehoe's thought processes were so distorted by her mental illness that she was not rational.

Dr. Marilyn Hutchison, Ph.D., also testified in support of Kehoe's defense of insanity. Dr. Hutchison opined Kehoe both understood the nature and quality of her actions when she cut her children's throats and Kehoe formed a specific intent to kill her children. However, she opined Kehoe did not understand cutting her children's throats was wrong, explaining Kehoe, in her "very, very irrational thinking," believed killing her children would save them from losing a parent and from a lifetime of depression, as well as guarantee them eternal life in Heaven.

Dr. Michael Taylor, M.D., testified on behalf of the State. He agreed with Dr. Logan that Kehoe suffered from a major depressive disorder. Dr. Taylor further testified that in his opinion, on October 28, 2008, Kehoe "was fully competent, fully capable of deliberating, premeditating, forming a specific intent to kill." He

opined on that day Kehoe was also fully capable of understanding the nature and quality of her acts and she "very clearly had the ability to differentiate between right and wrong."

At the close of evidence, instructions were submitted to the jury. Relevant here, the instruction concerning the elements of the insanity defense stated:

> If the State has proved all of the elements of a crime, you should then determine if [Kehoe] has proved whether she was insane.
>
> In order for [Kehoe] to establish she was insane, she must prove by a preponderance of the evidence either of the following:
>
> 1. At the time the crime was committed, [Kehoe] did not have sufficient mental capacity to know and understand the nature and quality of the acts she is accused of; or
>
> 2. At the time the crime was committed, [Kehoe] did not have the mental capacity to tell the difference between right and wrong as to the acts she is accused of.
>
> If [Kehoe] has failed to prove either of the elements by a preponderance of the evidence, [Kehoe] is guilty.

Kehoe's trial counsel did not object to the instruction set forth above, nor did he object to the marshalling instruction on attempted murder as not including malice aforethought as an element. Additionally, Kehoe's trial counsel did not request an instruction advising the jury of "the consequences of a verdict of not guilty by reason of insanity."

The jury ultimately rejected Kehoe's asserted insanity defense and found her guilty as charged. Kehoe now appeals.

## II. Discussion.

On appeal, Kehoe contends her trial counsel was ineffective in failing to (1) challenge the constitutionality of Iowa Code section 701.4, (2) request a jury instruction on the consequences of a verdict of not guilty by reason of insanity, and (3) object to the marshalling instruction on attempted murder as not including malice aforethought as an element. We review claims of ineffective assistance of counsel de novo. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). Although we generally preserve such claims for postconviction relief, where the record is sufficient to address the issues, we may resolve the claims on direct appeal. *Id.* We find the record here is adequate to address the issues.

In order to establish a claim for ineffective assistance of counsel, Kehoe must demonstrate her trial counsel (1) failed to perform an essential duty and (2) prejudice resulted. *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). If either element is not met, the claim will fail. *Id.* There is a strong presumption counsel's representation fell within the wide range of reasonable professional assistance, and Kehoe is not denied effective assistance by counsel's failure to raise a meritless issue. *State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2003). To demonstrate prejudice, the defendant must show that "but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Anfinson*, 758 N.W.2d at 499.

We now address Kehoe's arguments in turn.[1]

---

1. The issues were exceptionally well-briefed by both parties.

### A. Constitutionality of Iowa Code Section 701.4.

The legal standard for an insanity defense in Iowa is codified at Iowa Code section 701.4, which provides, in relevant part:

If the defense of insanity is raised, the defendant must prove by a preponderance of the evidence that the defendant at the time of the crime suffered from such a deranged condition of the mind as to render the defendant incapable of knowing the nature and quality of the act the defendant was committing or was incapable of distinguishing between right and wrong in relation to the act.

Iowa Code § 701.4; *see also Anfinson*, 758 N.W.2d at 501–02. The language of section 701.4 "is a codification of the rule articulated in Britain in M'Naghten's Case," known as the M'Naghten rule, which has been adopted in many other jurisdictions as the legal standard where insanity is alleged as a defense. *See* 4A B. John Burns, *Iowa Practice Series: Criminal Procedure* § 11:2, at 173 (2006) (citing *R. v. McNaughten*, 1843 WL 5869 (HL 1843)); *see also State v. Craney*, 347 N.W.2d 668, 679 (Iowa 1984).

The Iowa Supreme Court first adopted the M'Naghten rule as a common law rule in approximately 1928, *see State v. Harkness*, 160 N.W.2d 324, 330 (Iowa 1968), and the court continued to adhere to the rule despite numerous challenges throughout the years. *See, e.g., State v. Lass*, 228 N.W.2d 758, 768–69 (Iowa 1975) (declining to depart from the M'Naghten rule); *State v. Arthur*, 160 N.W.2d 470, 478–79 (Iowa 1968) ("We are not convinced that the M'Naghten [r]ule ... is unworkable in Iowa, nor are we convinced that alternatives to M'Naghten are better solutions."); *Harkness*, 160 N.W.2d at 335–37 (declining to depart from the M'Naghten rule in favor of the American Law Institute stan-

dard for insanity). In 1976, the general assembly, endorsing the M'Naghten rule, codified the rule at section 701.4. *See State v. McVey*, 376 N.W.2d 585, 587 (Iowa 1985) (citing 1976 Iowa Acts ch. 1245, § 104).

Section 701.4 was later challenged in *State v. Craney*, 347 N.W.2d at 679–80. In *Craney*, the defendant asserted the trial court erred in failing to give a separate instruction on "irresistible impulse" as a defense in addition to the jury instruction setting forth section 701.4's statutory definition of insanity. *Id.* The court found no error, noting:

In adopting the M'Naghten test, without any of the other alternatives and refinements which exist in this area of law, the General Assembly laid down the rule which is to be applied as the test of insanity in criminal prosecutions.

*Id.* at 680. The court reasoned the "entire defense of insanity is thus subsumed under the M'Naghten test embodied in section 701.4," including any alleged irresistible impulse on the part of a defendant, and it declined to alter the rule. *See id.*

The constitutionally of section 701.4 was specifically challenged in *State v. James*, 393 N.W.2d 465, 466 (Iowa 1986). In *James*, the Iowa Supreme Court was asked to find section 701.4 unconstitutional as violating James's federal and state due process rights because it placed the burden of establishing an insanity defense on the defendant. *James*, 393 N.W.2d at 466. The court rejected James's federal challenge, noting the United States Supreme Court had expressly rejected the same argument in *Leland v. Oregon*, 343 U.S. 790, 798–99, 72 S.Ct. 1002, 1007, 96 L.Ed. 1302, 1307 (1952). *See James*, 393 N.W.2d at 466 ("In *Leland* ... the court held that a state statute requiring an accused to establish an insanity defense did not violate due process. *Leland* is still the law.").

The court also rejected James's claim under the Iowa Constitution. The court stated:

> The due process guaranteed in article I, section 9 of the Iowa Constitution is identical to that in the fourteenth amendment to the United States Constitution. Normally we interpret provisions in our constitution which are similar to those in the federal constitution as being identical in scope, import and purpose. In *State v. Boland*, 309 N.W.2d 438, 440 (Iowa 1981) we applied this time-honored principle to the due process clauses of the federal and Iowa constitutions.

> Of course no rule requires us to apply the principle which accords our constitutional provision the same interpretation which has been rendered to the companion provision in the federal constitution. [James] urges us to give Iowa's due process clause an interpretation diametrically opposed to the existing interpretation of the federal clause. But to do so would contradict more than the federal authorities; it would also contradict the clear majority of conclusions of state appellate courts interpreting state constitutions.

*Id.* (citing thereafter *Price v. State*, 274 Ind. 479, 412 N.E.2d 783 (1980) (upholding the statute's placement of burden on the defendant in the face of both federal and state challenges); *People v. Drew*, 22 Cal.3d 333, 149 Cal.Rptr. 275, 583 P.2d 1318 (1978) (upholding the constitutionality of the burden on both state and federal grounds, finding the rule did not conflict with due process); *State v. Crocker*, 435 A.2d 58 (Me.1981) (holding that assigning the defendant "the burden of proving lack of criminal responsibility is permissible under the Maine and United States Constitutions.")). The court further noted:

> Ordinarily statutes regularly enacted by the legislature will be accorded a strong presumption of constitutionality and all reasonable intendments must be indulged in favor of the legislation attacked. One who challenges legislation on constitutional grounds has the burden to negate every reasonable basis upon which the statute may be sustained. Where the constitutionality of a statute is merely doubtful or fairly debatable, the courts will not interfere. Thus a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the Constitution authorities.

> The judicial branch of the government has no power to determine whether the legislative Acts are wise or unwise, nor has it the power to declare an Act void unless it is plainly and without doubt repugnant to some provision of the Constitution.

*Id.* at 467. Rejecting James's claim under the Iowa Constitution, the court explained:

> The presumption of constitutionality arises, not because we do not take the constitution seriously, but because we do. All three branches of government were commissioned by the same constituency. It is the primary function of the legislative branch to declare what the law shall be. When the people acting through that branch have made such a solemn declaration, our scheme of government calls upon the judicial branch to strike it down only with profound reluctance and only when it clearly falls outside the basic charter of government. The provision challenged here clearly withstands scrutiny under this standard.

> This court is in a poor position to subscribe to [James's] claim that the burden under the rule is so fundamentally unfair as to be unconstitutional. During most of our state's history we

preferred the burden under the challenged rule and adopted it as a matter of common law.

*Id.*

### 1. Due Process Claim.

■ Here, Kehoe first argues our legislature's adoption of the M'Naghten rule is a violation of due process under the Iowa Constitution because our standard does not include a volitional prong, unlike the American Law Institute (ALI) Model Penal Code's standard for determining insanity.[2] Kehoe asserts section 701.4's lack of a volitional prong did not allow the jury to consider whether her mental illness prevented her from conforming her behavior to legal standards, and thus violated her due process rights under article I, section 9 of the Iowa Constitution. We disagree.

■ As noted above in *James,* we normally interpret provisions in our constitution that are similar to those in the federal constitution as being identical in scope, import and purpose. *See James,* 393 N.W.2d at 466; *see also State v. Seering,* 701 N.W.2d 655, 662 (Iowa 2005). But, we do not always follow a lockstep approach in interpreting the Iowa Constitution. "[W]hile we recognize opinions of the United States Supreme Court as 'persuasive,' we 'jealously' protect our authority to follow our own independent approach." *State v. Ochoa,* 792 N.W.2d 260, 267 (Iowa 2010) (citations omitted).

In *Clark v. Arizona,* 548 U.S. 735, 742, 126 S.Ct. 2709, 2716, 165 L.Ed.2d 842, 855–56 (2006), the United States Supreme Court addressed the issue of whether Arizona's insanity defense statute, which includes only part of the M'Naghten rule, violated the Due Process Clause of the U.S. Constitution. In that case, Clark was accused of killing a police officer. *See Clark,* 548 U.S. at 743, 126 S.Ct. at 2716, 165 L.Ed.2d at 856. At trial, Clark did not challenge the shooting or death, but asserted an insanity defense based upon his undisputed paranoid schizophrenia at the time of the incident. *See id.* Arizona's insanity statute, which includes only the second part of the M'Naghten rule, required Clark to prove by clear and convincing evidence, that "at the time of the commission of the criminal act [he] was afflicted with a mental disease or defect of such severity that [he] did not know the criminal act was wrong. . . ." *See id.* at 744, 746, 126 S.Ct. at 2717, 2718, 165 L.Ed.2d at 856–57, 858 (citing Ariz.Rev. Stat. § 13–502(A) (2001)). Clark was ultimately found guilty of first-degree murder. *Id.* at 746, 126 S.Ct. at 2718, 165 L.Ed.2d at 858. Thereafter, Clark moved to vacate the judgment and sentence, asserting the Arizona Legislature "impermissibly narrowed" its insanity standard when it eliminated the first part of the M'Naghten rule from the statute in 1993. *Id.* The trial court denied Clark's motion, and the Arizona Court of Appeals affirmed Clark's conviction on his appeal, finding Arizona's "insanity scheme consistent with due process." *Id.* After the Arizona Supreme Court denied further review, the U.S. Supreme Court granted certiorari. *Id.* at 747, 126 S.Ct. at 2718, 165 L.Ed.2d at 858.

**2.** Under the ALI standard:

> A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct *or to conform his conduct to the requirements of law.*

Model Penal Code § 4.01(1), at 163 (1985) (emphasis added). The inclusion of a person's ability to "conform his conduct to the requirements of law" "explicitly reaches volitional incapacities." *Id.* § 4.01(1), explanatory note at 164.

On appeal, Clark challenged the Arizona Legislature's removal of the first part of the M'Naghten rule from the Arizona insanity test. *Id.* at 748, 126 S.Ct. at 2719, 165 L.Ed.2d at 859. He argued that the full M'Naghten rule represented "the minimum that a government must provide in recognizing an alternative to criminal responsibility on grounds of mental illness or defect." *Id.* Additionally, he asserted that removal of the "nature and quality" language in part one of the M'Naghten rule offended a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." ' *Id.* at 748–49, 126 S.Ct. at 2719, 165 L.Ed.2d at 859. The Supreme Court disagreed. *Id.*

The Court first noted that "[h]istory shows no deference to [the] M'Naghten [rule] that could elevate its formula to the level of fundamental principle, so as to limit the traditional recognition of a[s]tate's capacity to define crimes and defenses." *Id.* at 749, 126 S.Ct. at 2719, 165 L.Ed.2d at 859. With states having their own various definitions of insanity, the Court remarked "it is clear no particular formulation has evolved into a baseline for due process, and that the insanity rule, like the conceptualization of criminal offenses, is substantially open to state choice." *Id.* at 752, 126 S.Ct. at 2722, 165 L.Ed.2d at 862. Finding Arizona's statute did not "raise a proper claim that some constitutional minimum ha[d] been short-changed," the Court stated:

> *Clark's argument of course assumes that Arizona's former statement of the M'Naghten rule, with its express alternative of cognitive incapacity, was constitutionally adequate (as we agree).* That being so, the abbreviated rule is no less so, for cognitive incapacity is relevant under that statement, just as it was under the more extended formulation, and evidence going to cognitive incapaci-

ty has the same significance under the short form as it had under the long. *Id.* at 753, 126 S.Ct. at 2722, 165 L.Ed.2d at 862 (emphasis added). The Court concluded it was "satisfied that neither in theory nor in practice did Arizona's 1993 abridgment of the insanity formulation deprive Clark of due process," and it affirmed the decision of the Arizona Court of Appeals. *Id.* at 756, 779, 126 S.Ct. at 2724, 2737, 165 L.Ed.2d at 864, 878. Thus, it is clear that the U.S. Supreme Court in *Clark* found both the full M'Naghten rule and the minimal Arizona insanity rule to comport with the requirement of due process under the United States Constitution. *Id.* at 753, 126 S.Ct. at 2722, 165 L.Ed.2d at 862.

Several jurisdictions adhering to the M'Naghten rule have also found the elements of the rule to comport with due process under their state constitutions. *See, e.g., Jones v. State,* 648 P.2d 1251, 1259 (Okla.Crim.App.1982) (holding the M'Naghten rule of legal sanity is consonant with state and federal constitutional guarantees of due process of law); *Commonwealth v. Zewe,* 444 Pa.Super. 17, 663 A.2d 195, 201 (1995) (reaffirming its insanity statute did not violate state or federal due process requirements). Others have simply found their states' M'Naghten rule statutes meet federal due process requirements. *See, e.g., Schleicher v. State,* 718 N.W.2d 440, 448 (Minn.2006); *State v. Pagano,* 294 N.C. 729, 242 S.E.2d 825, 828 (1978); *State v. Myers,* 6 Wash.App. 557, 494 P.2d 1015, 1021 (1972).

Upon our review, we do not find section 701.4 is plainly and without doubt repugnant to the requirements of due process. The Iowa Supreme Court and numerous other courts have found the M'Naghten test to meet constitutional guarantees. We find no persuasive reason to depart from the United States Supreme Court's

analysis in *Clark*, and therefore we decline to interpret the Iowa Constitution guarantee of due process to afford more protection than the federal constitution with respect to the appropriate definition of sanity. *See State v. Allen*, 690 N.W.2d 684, 690 (Iowa 2005). We therefore reach the same conclusion, in interpreting our constitution, as that reached by the Court in *Clark* in interpreting the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Clark*, 548 U.S. at 753, 126 S.Ct. at 2722, 165 L.Ed.2d at 862. Kehoe's due process rights were not violated by section 701.4, and thus, her trial counsel did not render ineffective assistance by failing to challenge the constitutionality of this section under the Iowa Constitution's Due Process Clause. *See Graves*, 668 N.W.2d at 881 ("[T]rial counsel has no duty to raise an issue that has no merit.").

### 2. Cruel and Unusual Punishment Clauses.

■ Kehoe also contends that our legislature's adoption of the M'Naghten rule is a violation of the Cruel and Unusual Punishment Clauses, citing both the federal and Iowa constitutions. Her contention is premised on the belief that it is unconstitutional to criminally punish a person who, under the traditional M'Naghten test for determining sanity, cannot control his or her behavior. We find this argument unpersuasive.

Both the state and federal [3] constitutions prohibit "cruel and unusual punishment." *See* U.S. Const. amend. VIII; Iowa Const. art. I, § 17. Punishment may be cruel and unusual because it inflicts torture, is otherwise barbaric, or is so excessively severe it is disproportionate to the offense charged. *See State v. Bruegger*, 773 N.W.2d 862, 872

(Iowa 2009) ("The clause embraces a bedrock rule of law that punishment should fit the crime."); *State v. Cronkhite*, 613 N.W.2d 664, 669 (Iowa 2000).

Generally, a sentence that falls within the parameters of a statutorily prescribed penalty does not constitute cruel and unusual punishment. Only extreme sentences that are "grossly disproportionate" to the crime conceivably violate the Eighth Amendment.

Substantial deference is afforded the legislature in setting the penalty for crimes. Notwithstanding, it is within the court's power to determine whether the term of imprisonment imposed is grossly disproportionate to the crime charged. If it is not, no further analysis is necessary.

*Cronkhite*, 613 N.W.2d at 669 (citations omitted).

The United States Supreme Court and other courts have found the M'Naghten test complies with basic constitutional requirements. *See, e.g., Clark*, 548 U.S. at 753, 126 S.Ct. at 2722, 165 L.Ed.2d at 862; *Leland v. Oregon*, 343 U.S. 790, 798–99, 72 S.Ct. 1002, 1007, 96 L.Ed. 1302, 1307 (1952). Here, the M'Naghten test was submitted to the jury for a determination of whether Kehoe proved her asserted insanity defense, and the jury rejected Kehoe's defense. Kehoe does not cite, nor do we find, any authority finding that punishing someone who fails to meet the M'Naghten rule constitutes cruel and unusual punishment. *See State v. Herrera*, 993 P.2d 854, 867 (Utah 1999) ("[N]o court has ever ruled that punishing someone who fails to meet the M'Naghten test constitutes cruel and unusual punishment.' [citation omitted.] This continues to hold true today."). To the extent Kehoe argues

---

**3.** The Eighth Amendment is applicable to the states through the Fourteenth Amendment.

*State v. Phillips*, 610 N.W.2d 840, 843 (Iowa 2000).

life imprisonment, at least, is cruel and unusual punishment for her, it must be remembered she is being punished not for her status, but rather, for her filicidal act of first-degree murder, as well as her acts of attempted murder and child endangerment. *See People v. Grant,* 174 P.3d 798, 813 (Colo.Ct.App.2007). We find no violation of the prohibition against cruel and unusual punishment, and accordingly find her trial counsel did not render ineffective assistance by failing to challenge the constitutionality of this section under the state and federal Cruel and Unusual Punishment Clauses. *See Graves,* 668 N.W.2d at 881 ("[T]rial counsel has no duty to raise an issue that has no merit.").

### B. Jury Instructions.

### 1. Consequences of a Not Guilty Verdict by Reason of Insanity.

 Kehoe next contends her trial counsel was ineffective for failing to request a jury instruction informing the jury of the consequences of a verdict of not guilty by reason of insanity. Kehoe acknowledges Iowa cases have held such an instruction is generally inappropriate and unnecessary. *See State v. Oppelt,* 329 N.W.2d 17, 21 (1983); *State v. Hamann,* 285 N.W.2d 180, 185–86 (1979); *State v. Fetters,* 562 N.W.2d 770, 775 (Iowa Ct. App.1997). She asserts that compelling reasons exist to inform the jury of such a verdict, and as a result, her attorney was ineffective for not requesting these cases be overruled. We note that "[a]lthough counsel is not required to predict changes in the law, counsel must 'exercise reasonable diligence in deciding whether an issue is 'worth raising.'' " *State v. Dudley,* 766 N.W.2d 606, 620 (Iowa 2009) (citation omitted).

In *State v. Hamann,* our supreme court expressly held the refusal of this type of instruction was not error, explaining:

The majority rule is that the jury should not be informed of the effect of such a verdict. Two principle reasons are given for this view. The first is that such information is irrelevant to the jury's proper function, the determination of the insanity issue. The second reason is that the information would invite a compromised verdict.

. . . .

. . . [A]n instruction to the jury regarding the post-trial disposition of a defendant found not guilty by reason of insanity is irrelevant to the jury's proper function. It could only serve to confuse the jury or invite it to consider improperly defendant's posttrial disposition. A jury might improperly consider defendant's posttrial disposition even in the absence of an instruction on that subject. But this does not justify our aiding and abetting it in that role. Rather, such a possibility merely tends to illustrate the necessity of precisely informing the jury of its proper function.

*Hamann,* 285 N.W.2d at 186 (citations omitted). Additionally, the United States Supreme Court has considered and rejected the argument that such an instruction should be given because a juror's lack of knowledge or understanding of the consequences of a verdict of not guilty by reason of insanity might result in a decision to find the defendant guilty instead of risking the defendant's release into the community. *See Shannon v. United States,* 512 U.S. 573, 585–86, 114 S.Ct. 2419, 2428, 129 L.Ed.2d at 459, 470 (1994) ("We also are not persuaded that the instruction Shannon proposes would allay the fears of the misinformed juror about whom Shannon is concerned. '[I]f the members of a jury are so fearful of a particular defendant's release that they would violate their oaths by convicting [the defendant] solely in order to ensure that he is not set free, it is

questionable whether they would be reassured by anything short of an instruction strongly suggesting that the defendant, if found [not guilty by reason of insanity], would very likely be civilly committed for a lengthy period.'" (citation omitted)). Given our and the United States Supreme Court's prior precedents, and the reasons stated therein, we conclude a normally competent attorney would have found the question was not worth raising under the circumstances presented. *See State v. Fountain,* 786 N.W.2d 260, 266 (Iowa 2010) (citing *State v. Schoelerman,* 315 N.W.2d 67, 72 (Iowa 1982)). We find Kehoe's attorney was not ineffective for failing to request the instruction be given.

### 2. *Failing to Object to the Attempted Murder Jury Instruction.*

■ Iowa Code section 707.11 states, in relevant part:

> A person commits a class "B" felony when, with the intent to cause the death of another person and not under circumstances which would justify the person's actions, the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person.

Although section 707.11 is entitled in the code as "attempt to commit *murder,*" the express terms of the statute indicate it does not contain a "malice aforethought" element. (Emphasis added.)

The marshalling instruction given by the trial court in this case stated:

> The State must prove all of the following elements of ... attempt to commit murder:
>
> 1. On or about October 26, 2008, [Kehoe] cut [S.M.K.] with a knife.
>
> 2. By her acts, [Kehoe] expected to set in motion a force or chain of events

which would cause or result in the death of [S.M.K.].

> 3. When [Kehoe] acted, she specifically intended to cause the death of [S.M.K.].
>
> If the State has proved all the elements, [Kehoe] is guilty of ... attempt to commit murder. If the State has failed to prove any one of the elements, [Kehoe] is not guilty of ... attempt to commit murder....

No malice aforethought element was included, and Kehoe's trial counsel did not object to the element's absence.

On appeal, Kehoe asserts that because the Code has identified the crime stated in section 707.11 as "attempt to commit *murder,*" and murder is defined in the code as occurring when "[a] person who kills another person with *malice aforethought* either express or implied commits murder," her attorney was ineffective for not objecting to the marshalling instruction that did not include a malice aforethought element. *See* Iowa Code §§ 707.1, 707.11 (emphasis added). We disagree.

In 1976, the legislature enacted a "complete revision of the substantive criminal laws." 1976 Iowa Acts ch. 1245. The legislature created a new section entitled "attempt to commit homicide," which replaced "assault with intent to commit murder." *See id.* § 711; *State v. Braggs,* 784 N.W.2d 31, 35 (Iowa 2010). However, when the 1979 Iowa Code was printed, the code editor retained the word "murder" in the title of the section, rather than "homicide" as stated by the legislative act.

■ As the Iowa Supreme Court has explained, a headnote is "no part of the statutory law of the State, and its inclusion in the information in the instant case adds nothing to the information." *State v. Chenoweth,* 226 Iowa 217, 220, 284 N.W. 110, 112 (1939). As to section 707.11, the statute

only requires "(1) a specific intent to cause the death of another and (2) an overt act in furtherance of the required specific intent" to be guilty of attempted murder. *See State v. Young*, 686 N.W.2d 182, 185 (Iowa 2004); *see also* Iowa Code § 707.11.[4] Malice aforethought is a not required element under the express language of the statute.

Because malice aforethought is not an element of the crime of attempt to commit murder, we find Kehoe's trial counsel had no duty to object to the instruction. *See Graves*, 668 N.W.2d at 881 ("[T]rial counsel has no duty to raise an issue that has no merit."). We find her counsel was not ineffective for failing to object to the instruction.

### III. Conclusion.

For the foregoing reasons, we affirm Kehoe's convictions for first-degree murder, attempted murder, and child endangerment resulting in serious injury.

**AFFIRMED.**

TABOR, J., takes no part.

---

4. The words "attempt to commit murder" appear in the second paragraph of section 707.11 in reference to an indictment for attempt to commit murder, while the statute otherwise uses the terms "to cause the death."